TEXAS CARPENTERS HEALTH BENE-
FIT FUND, IBEW–NECA Southwestern
Health and Benefit Fund and North
Texas Laborers' Health and Welfare
Fund, on Behalf of Themselves and on
Behalf of all Others Similarly Situated,
Plaintiffs,

v.

PHILIP MORRIS, INC.; RJ Reynolds To-
bacco Co.; Brown & Williamson Tobac-
co Co.; B.A.T. Industries P.L.C.; Loril-
lard Tobacco Co.; Liggett Group, Inc.;
the American Tobacco Co.; United
States Tobacco Co.; the Council for To-
bacco Research—U.S.A., Inc.; Smokeless
Tobacco Council, Inc.; the Tobacco In-
stitute, Inc. and Hill & Knowlton, Inc.;
Defendants.

No. 1:97CV625(TH).

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 31, 1998.

Windle Turley, Dallas, TX, John Broaddus, Washington, D.C., Robert J. Connerton, Washington, D.C., Robert Blakey, Notre Dame, IN, Jonathan S. Massey, Washington, D.C., for plaintiff.

Jack E. McClard, Richmond, VA, Maya Eckstein, Richmond, VA, Lawrence Louis, Germer, Beaumont, TX, Sydney Bosworth McDole, Dallas, TX, Jerome Richard Doak, Dallas, TX, Jill E. Tananbaum, Dallas, TX, Walter Joshua Crawford, Jr., Beaumont, TX, Jennifer Gardner, Washington, D.C., Kenneth N. Bass, Washington, D.C., Tanner Truett Hunt, Jr., Beaumont, TX, Melody G. Thomas, Beaumont, TX, John J. Kenney, New York, NY, Gerald E. Hawxhurst, New York, NY, Brian C. Lake, New York, NY, Robert A. Gwinn, Dallas, TX, Ellen B. Malow, Houston, TX, Michael M. Fay, New York, NY, Jack Potter Carroll, Beaumont, TX, Robert E. Dodson, Texarkana, TX, Mark E. Lowes, Houston, TX, William Key Wilde, Houston, TX, Dennis Hranitzky, New York, NY, Steven Klugman, New York, NY, Lipscomb Norvell, Jr., Beaumont, TX, Jacqueline

M. Stroh, Beaumont, TX, Lea F. Courington, Dallas, TX, Scott William MacLaren, Dallas, TX, Benton Jordan Barton, Dallas, TX, Edward John ("Jack") O'Neill, Jr., Houston, TX, Byron Charles Keeling, Houston, TX, Bruce Ginsberg, New York, NY, and Marc J. Rachman, New York, NY, for defendant.

## MEMORANDUM OPINION AND ORDER

HEARTFIELD, District Judge.

Before the Court is *Defendants' Motion to Dismiss* [19]. The Court heard argument on the motion May 6, 1998. Having considered the arguments of counsel, the papers submitted, the applicable law and the record in this case, the Court is of the opinion that the motion should be GRANTED.

### I. Background

Plaintiffs are three union trust funds[1] (Funds) which provide comprehensive health care benefits to employees, retirees and their dependents (Participants) through welfare benefit plans. *Compl.*, ¶ 1. The Funds are governed by the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 et seq., and the Labor Management Relations Act (Taft–Hartley), 29 U.S.C. § 141 et seq. The Funds are financed by withholding employee wages at amounts negotiated through collective bargaining. The Funds are set up as non-profit trusts, with all assets held for the purpose of providing healthcare benefits to Participants. *See* ERISA, § 1103(a). The Funds are administered by a board of trustees, drawn equally from representatives of both labor and management. *Tr., Hr'g on Mot. to Dismiss*, at 19–20. The trustees are fiduciaries, meaning that they must discharge their Fund-related duties in the best interest of Participants, subordinating their own interests to those of the Participants. *See* ERISA § 1104(a). This standard mandates that trustees "ensure that a plan receives all funds to which it is entitled, so that those funds can be used on behalf of participants and beneficiaries." *Cent. States, Southeast & Southwest Areas Pension Fund v. Cent. Transport, Inc.*, 472 U.S. 559, 571–72, 105 S.Ct. 2833, 86 L.Ed.2d 447(1985). This is the basis upon which the Funds filed suit.

Defendants are tobacco companies[2] and their lobbying and public relations agents[3] (Tobacco).

The Funds generally allege that Tobacco assumed a duty to protect the public health with the publication in 1954 of "A Frank Statement to Cigarette Smokers." *Compl.*, ¶¶ 83–86, 335. Through this publication, the Funds contend, Tobacco undertook a special duty to ascertain and disclose "objective and unbiased research regarding smoking and health." *Compl.*, ¶ 83. The Funds maintain that Tobacco, with its collective eye on the bottom line, conspired to breach this duty in a concerted effort to externalize costs attendant to smoking upon other sectors of the economy, including benefit plans such as the Funds. *Compl.*, ¶¶ 239, 282, 288, 314. Specifically, the Funds contend Tobacco:

- manipulated the nicotine content in cigarettes;

- misrepresented, concealed and suppressed information regarding the health consequences of smoking and the addictive properties of nicotine;

- restrained the trade of information relating to the feasibility of manufacturing less dangerous cigarettes; and

- targeted cigarette sales at minors. *Compl.*, ¶ 15.

The Funds further allege that they relied upon Tobacco's "materially false, incomplete and misleading representations" regarding smoking, and, as a result, were unable to recognize the need to discourage and reduce tobacco use by Participants. *Compl.*, ¶¶ 311, 316, 337, 342. The Funds contend that this

---

[1]. Texas Carpenters Health Benefit Fund, IBEW–NECA Southwestern Health and Benefit Fund and North Texas Laborers' Health and Welfare Fund.

[2]. Philip Morris, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Corp., B.A.T. Industries, P.L.C., Lorillard Tobacco Co., The Liggett Group, Inc., American Tobacco Co. and United States Tobacco Co.

[3]. The Council for Tobacco Research—U.S.A., Inc., The Smokeless Tobacco Council, Inc., The Tobacco Institute, Inc. and Hill & Knowlton, Inc.

failure to adopt measures designed to curb tobacco use resulted in increased medical care costs attributable to tobacco. *Compl.,* ¶ 276. It is these costs the Funds seek to recoup.

On October 31, 1997, the Funds filed an eighteen count [4] complaint against Tobacco, alleging:

- violation of the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962 et seq. (COUNTS I–III);
- violation of the Sherman Act, 15 U.S.C. § 1 et seq. (COUNT IV);
- violation of the Texas Free Enterprise and Antitrust Act, TEX. BUS. & COM. CODE § 15.01 et seq. (COUNT V);
- fraud and misrepresentation (COUNT VI);
- negligent misrepresentation (COUNT VII);
- innocent misrepresentation (COUNT VIII);
- intentional breach of special duty (COUNT IX);
- negligent breach of special duty (COUNT X);
- breach of express and implied warranties, Tex. Bus. & Com.Code §§ 2.313, 2.314. (COUNT XI);
- simple and gross negligence (COUNT XII);
- conspiracy and concert of action (COUNT XIV);
- aiding and abetting liability (COUNT XV);
- restitution to prevent unjust enrichment (COUNT XVI);
- violation of the Texas Deceptive Trade Practices and Consumer Protection Act (DTPA), TEX. BUS. & COM. CODE § 17.41 et seq. (COUNT XVII); and
- vicarious liability (COUNT XVIII). *Compl.,* ¶¶ 225–406.

Based upon these allegations, the Funds seek, on behalf of themselves and all similarly situated funds in the State of Texas, to recover a portion of the costs expended treating Participants' tobacco-related illnesses. *Compl.,* ¶¶ 5, 391. The Funds also request injunctive relief in three forms, requiring Tobacco to: (1) disclose all research relating to the deleterious effects of tobacco; (2) fund a remedial public education campaign on the health consequences of smoking; and (3) implement smoking cessation programs for nicotine-dependent Participants. *Compl.,* ¶ 5.

By motion filed February 2, 1998, certain defendants [5] seek dismissal of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that the Funds failed to state a claim upon which relief may be granted. For the reasons which follow, the motion is GRANTED.

## II. *Jurisdiction*

This Court has subject matter jurisdiction over Counts I–IV because such claims arise under federal law. 28 U.S.C. § 1331. District courts have original jurisdiction over civil actions arising under RICO and the Sherman Act. 18 U.S.C. § 1964(a); 28 U.S.C. § 1337(a). Supplemental jurisdiction over the state law claims alleged in Counts V–XVIII exists because these claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy. 28 U.S.C. § 1367(a). This is so because all the claims derive from "a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Walker v. Cadle Co.,* 51 F.3d 562, 571 (5th Cir.1995).

---

**4.** At the hearing held May 6, 1998, the Court granted the Funds' oral motion to dismiss Count XIII, the 402A strict liability claim. *Tr., Hr'g on Mot. to Dismiss,* at 19. Therefore, only seventeen counts remain.

**5.** All Tobacco defendants joined in filing the motion except B.A.T. Industries, The Smokeless Tobacco Council, Inc. and The Liggett Group, Inc. By separate motion filed February 4, 1998, The Liggett Group joined the motion. B.A.T. Industries and The Smokeless Tobacco Council filed a motion to dismiss for lack of personal jurisdiction on June 22, 1998.

### III. Legal Standard—Motion to Dismiss

Dismissal of an action is appropriate where the complaint fails to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6). Several well settled principles guide the 12(b)(6) inquiry.

When considering a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accepting as true the material allegations in the complaint as well as any reasonable inferences to be drawn therefrom. *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982). Rule 12(b)(6) does not countenance dismissal of an action based upon a judge's disbelief in the veracity of the pleaded facts. *Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The 12(b)(6) methodology requires the Court to determine whether the facts—which are admitted as true for the purposes of the motion—state a valid claim for relief. *Crowe v. Henry,* 43 F.3d 198, 203 (5th Cir.1995). This is not to say that the Court should consider all pleaded facts, as neither conclusory allegations nor unwarranted deductions are admitted as true. *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir.1992).

General allegations suffice at the pleading stage since it is presumed that general allegations embrace those specific facts necessary to support the claim. *Nat'l Org. for Women v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994). The Federal Rules do not compel the plaintiff to set out in detail the facts upon which the claim is based. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). To the contrary, the rules contemplate notice pleading, requiring nothing more than a "short and plain statement of the claim" sufficient to give the defendant fair notice of the claim and the grounds upon which it rests. *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

As a practical matter, a 12(b)(6) dismissal should only be granted where the plaintiff pleads himself out of court on the face of the complaint. Wright & Miller, Federal Practice and Procedure: Civil 2d § 1357 at 344. It must appear beyond doubt that the plaintiff can prove no set of facts in support of the claim entitling him to relief. *Conley,* 355 U.S. at 45–46, 78 S.Ct. 99. Whether recovery appears remote or unlikely is irrelevant to the 12(b)(6) inquiry, and therefore, a complaint should never be dismissed merely because the Court doubts the plaintiff will ultimately prevail. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

Mindful of these considerations, the Court now turns to the motion's substantive argument.

### IV. DISCUSSION

### A. PROXIMATE CAUSE GENERALLY

Embodied in the causal inquiry are aspects of both actual and proximate cause. Evaluating actual cause is a fact driven exercise, questioning whether an act or omission is a "but for cause" or a "substantial factor" in bringing about an event. Because the relationship between cause and effect is a question of experience, actual cause is, in the ordinary case, a question for the jury.

Proximate cause takes the analysis one step further, inquiring whether, as a matter of law, the nexus between cause and effect is too attenuated to justify liability, even if the conduct did, as a factual matter, cause the injury. Simply put, proximate cause limits liability for remote consequences. Proximate cause reflects the need to establish a point beyond which injuries will find no remedy at law. Our system of law requires such a limiting principle because "[i]n a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events." W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 41, at 264 (5th ed.1984). Imposing liability predicated solely on actual cause would result, therefore, in infinite liability for all wrongful acts and fill the courts with endless litigation. *Id.*

While it is easy to see why such a limiting principle is necessary, determining when a defendant should be held legally responsible for an injury is neither an easy task nor an exact science. This is so because proximate cause reflects at its most basic level concerns for convenience, public policy; and justice.

*See Palsgraf v. Long Island R. Co.*, 248 N.Y. 339, 352, 162 N.E. 99 (1928) (Andrews, J., dissenting).[6] Weighing amorphous considerations which limit liability even where the fact of causation is clearly established has occupied the better time of many a legal scholar.

This endeavor is further complicated by the fact that the term itself escapes precise definition. The quest to define proximate cause has been called "fruitless." Keeton, *supra*, § 42 at 279. Efforts to capture the meaning of this elusive concept have resulted in an extensive nomenclature for the term; and it is proximate cause to which courts speak when describing injuries as too "attenuated," "remote," "indirect," "tenuous," "fortuitous," "incidental," and "consequential" to permit recovery at law.

As the motion before the Court today moves for dismissal on the ground of inadequate showing of proximate cause, the Court for purposes of this motion will assume without finding that actual cause has been adequately alleged.[7] The Court now considers proximate cause as it applies to the claims before the Court.

## B. RICO AND ANTITRUST CLAIMS

COUNT I:     RICO—18 U.S.C. §§ 1962(C)(D)
COUNT II:    RICO—18 U.S.C. §§ 1962(A)(D)
COUNT III:   RICO—18 U.S.C. §§ 1962(B)(D)
COUNT IV:    Sherman Act—15 U.S.C. § 1

COUNT V:     Texas Free Enterprise and Antitrust Act—Tex. Bus. & Com.Code § 15.05(a)

Common law principles requiring proof of proximate cause apply to claims brought pursuant to RICO,[8] the Sherman Act[9] and the Texas Free Enterprise and Antitrust Act.[10]

In evaluating whether the Funds have properly alleged proximate cause, the Court is guided by a body of law which calls for the balancing of mixed considerations of logic, common sense, justice, policy and precedent. The Court will consider these three causes of action together because the factors which the Court must consider apply with equal force to each.

### 1. *Direct Relationship Between Conduct and Injury*

■ Fundamental principles of proximate cause dictate that plaintiffs may only recover for injuries directly suffered. *Associated,* 459 U.S. at 540, 103 S.Ct. 897; *Holmes,* 503 U.S. at 268–69, 112 S.Ct. 1311. This threshold inquiry evaluates whether there is a sufficient physical and economic nexus between the defendant's conduct and the plaintiff's injury to justify imposing liability. *Blue Shield,* 457 U.S. at 477, 102 S.Ct. 2540.

■ While it might appear that a proper analysis would begin with an assessment of the conduct alleged to be violative of each of the statutes, the Court sees no need to do so.

**6.** Although not the majority opinion, Justice Andrews' dissent is often quoted in discussions of proximate cause. *See, e.g., Associated Gen. Contractors of California. Inc. v. California State Council of Carpenters,* 459 U.S. 519, 537 n. 34, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 478 n. 13, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982).

**7.** At the hearing held on the motion, counsel representing Tobacco assumed for the purposes of the motion that actual causation had been adequately alleged and could be proven. *Tr., Hr'g on Mot. to Dismiss,* at 37.

**8.** To properly state a claim under RICO, "[p]roximate cause is ... required." *Holmes v. Sec. Inv. Protection Corp.,* 503 U.S. 258, 268, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

**9.** Because antitrust violations will by their nature cause "ripples of harm" throughout the economy, courts must recognize a point beyond which the wrongdoer will not be liable. *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 476–77, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982). It is for this reason that Congress intended antitrust litigation "would be subject to constraints comparable to well-accepted common law rules applied in comparable litigation," including proximate cause. *Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 533, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

**10.** Section 15.04 of the Texas Free Enterprise and Antitrust Act provides that it should be "construed in harmony with federal judicial interpretations of comparable federal antitrust statutes." The Texas antitrust statute is "comparable to, and indeed taken from" the Sherman Act. *See DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 687 (Tex.1990). Because proximate cause is required under the Sherman Act, it follows that a properly stated claim under the Texas Free Enterprise and Antitrust Act contains the proximate cause component.

This is so because the injury alleged by the Funds cannot under any circumstances be properly considered a direct injury. The record in this case makes clear that the Funds seek to recoup medical costs expended treating Participants who suffered from tobacco-related illnesses:

- This is an action to recover funds expended by the Health and Welfare Trust Funds to provide medical treatment to their participants and their beneficiaries suffering from smoking-related illnesses. *Compl.*, ¶ 5.

- Defendants should be ordered to pay restitution to Plaintiffs of those sums reasonably expended, and to be expended in the future by the Plaintiffs, to cover the medical expenses incurred by their participants and beneficiaries as a result of Defendants' conduct. *Compl.*, ¶ 391.

- Plaintiffs have brought this action … to recover the health care costs expended by the Funds to treat their participants. *Pls.' Resp.*, at 1.

- Plaintiffs seek to recover costs incurred by the Funds to treat participants who have suffered and suffer from tobacco-related diseases. *Pls.' Resp.*, at 5.

▪ As a matter of well settled federal common law, a benefit provider may not bring a direct claim for medical expenses paid on behalf of an injured party against the tortfeasor due to the absence of a sufficient nexus between the benefit provider's injury and the tortfeasor's conduct.

In the leading case, *Anthony v. Slaid*, 52 Mass. 290, 291 (1846), the court refused to allow the plaintiff, who entered into an agreement with the town whereby he agreed to support all town paupers for a specified period of time, to maintain an action against the tortfeasor who assaulted one of the town paupers, thereby putting the plaintiff to increased expense. The Court rejected the claim on the ground that the injury to the

plaintiff arose merely "by means of the special contract by which he had undertaken to support the town paupers," as opposed to a direct physical or economic relationship between the plaintiff and the tortfeasor.

Citing to the *Anthony* facts, the Supreme Court embraced the reasoning of the case nearly 150 years later, observing that:

where the plaintiff sustains injury from the defendant's conduct to a third person, *it is too remote*, if the plaintiff sustains no other than a contract relation to such a third person, or is under contract obligation on his account, and the injury consists only in … increasing the plaintiff's expense or labor of fulfilling such contract, unless the wrongful act is willful for that purpose.

*Associated*, 459 U.S. at 533 n. 25, 103 S.Ct. 897 (emphasis added). The Supreme Court revisited the issue once again in *Holmes*, noting that: "[a] plaintiff who complained of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts was generally said to stand at too remote a distance to recover." 503 U.S. at 268–69, 112 S.Ct. 1311.

The Funds insist that an adequate physical and economic nexus between their injury and Tobacco's conduct exists. *Pls.' Resp.*, at 10. The Funds contend this action is distinguishable from the authority cited because Tobacco *intended* to thwart measures by the Funds to reduce smoking, thereby bringing this claim within the *Associated* savings clause.[11] *Id.* The Funds submit that Tobacco's fraudulent conduct was designed to prevent the Funds from taking action to reduce its cost burdens from tobacco-related diseases, including:

- implementing nicotine addiction programs to educate fund Participants;

- instituting smoking cessation programs;

- excluding or limiting smoking-related diseases from coverage;

---

11. The savings clause can be found in the last phrase: "[W]here the plaintiff sustains injury from the defendant's conduct to a third person, it is too remote, if the plaintiff sustains no other than a contract relation to such a third person, or is under contract obligation on his account, and the injury consists only in … increasing the plaintiff's expense or labor of fulfilling such contract, *unless the wrongful act is willful for that purpose.*" *Associated*, 459 U.S. at 533 n. 25, 103 S.Ct. 897 (emphasis added).

• imposing cost-sharing requirements on smokers (e.g., deductibles and co-payments);

• requiring smokers to participate in smoking cessation programs; and

• adopting rules requiring smokers to use safer cigarettes.

*Id.* at 10–11.

However appealing the Funds' argument may be at first blush, the Court is left to conclude that the measure of damages the Funds seek to recoup is nothing more than the medical costs spent treating Participants, amounts which are clearly not recoverable in a direct action by a benefit provider.

That the Funds paid the Participants' smoking related medical expenses is a function of the collective bargaining agreements they voluntarily entered into for the purpose of providing comprehensive health care benefits to Participants. Just as in *Anthony*, the Funds incurred such costs as a result of the contracts through which the Funds undertook this obligation, as opposed to a direct relationship between the Funds and Tobacco. The Funds had a contractual duty to pay those expenses regardless of the genesis of the medical condition because payment of Participants' medical expenses is the very purpose for which the plans were established. For the Funds to now attempt to recover such amounts from Tobacco in a direct action is inconsistent with the position the Funds occupy as healthcare benefit providers.

The Court finds, therefore, that the nexus between the Funds' injury and Tobacco's conduct is insufficient as a matter of law to support the claim. The Funds have, therefore, failed to adequately plead a direct relation between the alleged injury and conduct.[12]

**2.  *Existence of Another Class of Plaintiffs***

The existence of a more directly injured class of persons whose self-interest would normally motivate them to vindicate the public interest in enforcing the law diminishes the justification for allowing more remote parties to maintain suit. *Associated,* 459 U.S. at 542, 103 S.Ct. 897; *Holmes,* 503 U.S. at 269–70, 112 S.Ct. 1311. This is so because directly injured victims can generally be counted on to "vindicate the law as private attorneys general," without the problems attendant to suits by more remote parties. *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311.

This consideration also cuts against the Funds' claim because a wealth of actions against Tobacco have been brought by more directly injured victims. The states and the individual smokers are far better positioned to vindicate the public interest in enforcing the law than more indirectly injured plaintiffs such as the Funds. Both classes have already filed suits throughout the country, and actions by both the State of Texas and individual smokers are currently pending in the Eastern District of Texas. In his order denying the defendants' motion to dismiss, Judge Folsom found that the State of Texas satisfied proximate cause requirements by virtue of its quasi-sovereign power to protect the health, welfare and well-being of the populace. *See Memorandum Opinion and Order Re Defendants' Motion to Dismiss Count 1–3 and Counts 4–17 of the State's Second Amended Complaint* [docket entry 1031], *Texas v. The American Tobacco Co.,* No. 5:96cv91 (E.D.Tex. Sept. 8, 1997). The suit by the State of Texas included claims brought pursuant to RICO, the Sherman Act and the Texas Free Enterprise and Antitrust Act. *Second Amended Complaint, Texas v. The American Tobacco Co.,* No. 5:96cv91 (E.D. Tex. filed March 3, 1996).

Moreover, one putative class action and suits by individual smokers have also been filed. *See Cole v. The Tobacco Institute,* No. 1:97cv256 (E.D. Tex. filed May 5, 1997); *Bush v. Philip Morris, Inc.,* No. 5:97cv180 (E.D.Tex. filed July 7, 1997). Although these

---

**12.** The Court notes that this finding comports with the conclusions reached by other federal district courts which have specifically considered the directness issue. *See Seafarers Welfare Plan v. Phillip Morris,* 1998 WL 723158, No. MJG–97–2127, slip op. (D.Md. July 13, 1998); *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris,* 1998 WL 476265 (N.D. Cal. April 30, 1998); *City and County of San Francisco v. Philip Morris,* 957 F.Supp. 1130, 1137–38 (N.D.Cal.1997).

courts have not yet considered the directness issue, there can be no doubt that the individual smokers are more directly injured plaintiffs than the Funds. While the Court is cognizant of the fact that neither RICO nor the antitrust laws allow recovery for personal injuries, individual smokers can maintain actions predicated upon the same conduct for which the Funds bring suit. Therefore, individual smokers do vindicate the law by ensuring that Tobacco's conduct is punished, albeit not under these statutory schemes.

In conclusion, because more directly injured plaintiffs exist which are better positioned to vindicate the public interest in enforcing the law, there is no need to allow the Funds, which are, at best, indirectly injured parties, to maintain suit.

### 3. Risk of Duplicative Liability

Another reason courts are loathe to allow remote parties to maintain suit is that actions by indirectly injured plaintiffs create the risk of duplicative liability for the same conduct. *Blue Shield,* 457 U.S. at 474, 102 S.Ct. 2540; *Associated,* 459 U.S. at 544, 103 S.Ct. 897; *Holmes,* 503 U.S. at 269, 112 S.Ct. 1311.

Here, the risk of subjecting Tobacco to duplicative liability for the same conduct is very real. As already noted by the Court, more directly injured plaintiffs have filed suit seeking to recover damages for the same conduct made the basis of this suit. The suits brought by the State of Texas and the individual smokers state claims grounded upon the same conduct upon which the Funds seek to maintain suit.

There can be no doubt that allowing this suit to go forward creates the risk of duplicative liability for the same conduct. Thus, the Court concludes that this consideration also weighs against allowing the Funds to maintain suit.

### 4. Speculative Damage Theory

Another factor to be considered is the certainty of the damage model. The cases make clear the policy against allowing claims bottomed upon speculative damage theories to proceed. *Blue Shield,* 457 U.S. at 475 n.

11, 102 S.Ct. 2540; *Associated,* 459 U.S. at 542, 103 S.Ct. 897.

The theory of liability pled by the Funds mitigates against allowing this claim to go forward. The Funds' case relies upon too many tenuous links to withstand scrutiny. The Funds' argument is that:

- Tobacco misrepresented and suppressed information regarding the health consequences of tobacco;
- As a result, the Funds failed to take steps to curb tobacco use;
- Participants, therefore, smoked in greater numbers, with more frequency;
- Participants developed more health problems;
- Such health problems were caused by tobacco use;
- A portion of these health problems could have been prevented by the measures the Funds would have taken to curb tobacco use had Tobacco not suppressed and misrepresented information; and
- The Funds were forced to pay medical expenses which they would not have had to pay had Tobacco not suppressed and misrepresented information regarding the health consequences of Tobacco.

Under the Funds' theory of recovery, it would be extremely difficult, if not impossible, to determine the damages attributable to Tobacco's conduct. A multitude of variables seriously undermine any real ability to properly assign an amount to this measure of damages. First, it would be necessary to determine what action the Funds would have taken to curb tobacco use. The Court would then have to evaluate the effect of hypothetically implemented preventive measures. Then the Court would have to determine which costs are attributable to the failure to implement such preventive measures. There is also the problem of identifying which costs were incurred treating tobacco related illnesses (as opposed to other health problems). The Court is skeptical that any meaningful figure could be reached that would reflect this figure (if one even exists). Such speculative theories do not lend themselves to credible reduction to mathematically-precise terms.

For these reasons, the Court is of the opinion that the Funds' theory of liability is too speculative, abstract and impractical to justify allowing this case to proceed.

## 5. *Administrative Concerns*

The Court must also consider the burden the litigation works upon the judiciary. *Blue Shield*, 457 U.S. at 474–75, 102 S.Ct. 2540; *Associated*, 459 U.S. at 544, 103 S.Ct. 897; *Holmes*, 503 U.S. at 269, 112 S.Ct. 1311. This is not to say that a claim well grounded in law and fact should not be allowed to go forward simply because of the difficulty it presents to the court. Rather, this factor operates as a presumption against allowing burdensome litigation to proceed where there are more directly injured parties who are able to bring the suit without the attendant complicating factors.

The feasibility and consequences of implementing particular damage theories is one such consideration. *Blue Shield*, 457 U.S. at 475 n. 11, 102 S.Ct. 2540. Here, the added dimension of complexity caused by the need to apportion damages among various plaintiffs weighs against allowing the case to go forward. Damage apportionment is a very real problem in this litigation because, as stated earlier, there are other plaintiffs seeking to recover the same measure of damages—tobacco related medical expenses—as the Funds seek. *See Cole v. Tobacco Institute*, No. 1:97cv256 (E.D. Tex. filed May 5, 1997); *Bush v. Philip Morris*, No. 5:97cv180 (E.D.Tex. filed July 7, 1997). At some point, a court would have to deal with the cumbersome apportionment consequences wrought by allowing this case to proceed. This Court is of the opinion that judicial resources would better be utilized by allowing directly injured plaintiffs to maintain suit for recovery of the full spectrum of available damages, as opposed to a piecemeal apportionment of damages among various classes of plaintiffs.

The case law also counsels against opening the "flood gates to administratively inconven-ient and unmanageable litigation." *Khurana v. Innovative Health Care Systems, Inc.*, 130 F.3d 143, 148 (5th Cir.1997). This action is precisely the type of indirect, massive and complex lawsuit the case law advises against. *Holmes*, 503 U.S. at 274, 112 S.Ct. 1311. This being the case, the Court is of the opinion that administrative concerns also weigh against the maintenance of this action.

## 6. *Unremedied Injuries*

Courts should also take into account the policy against allowing injuries resulting from unlawful conduct to go unremedied. *Blue Shield*, 457 U.S. at 473 n. 10, 102 S.Ct. 2540;[13] *Associated*, 459 U.S. at 542, 103 S.Ct. 897.[14] Here, the Funds are not left without a remedy. Nothing would preclude the Funds from seeking recovery for their "injuries"—increased costs incurred treating Participants' tobacco-related illnesses—in subrogation. If and when recovery is had for these damages by the individual smokers, the Funds can assert their contractual right to such funds in subrogation.

Subrogation is a legal fiction whereby the subrogee is able to recover costs to which it is entitled, but for which it cannot directly maintain suit. As applied to the situation at hand, the Funds would be able to recover from Participants any amounts they receive in excess of their actual loss after having been compensated by both the benefit providers and Tobacco. *Oss v. United Services Automobile Ass'n*, 807 F.2d 457, 458 (5th Cir.1987).

Subrogation rights may also be exercised in another way, by allowing the subrogee to actually "step into the shoes" of the injured party and sue the tortfeasor. Once a benefit provider has compensated the injured party, it may sue the tortfeasor in subrogation to recover its outlay. *Oss*, 807 F.2d at 458. In such a suit, the subrogee is subject to the same defenses, such as assumption of the risk, as would be good against the injured party. *Esparza v. Scott and White Health*

---

**13.** "[D]enying standing to McCready and the class she represents would also result in the denial of compensation for injuries resulting from unlawful conduct." *Blue Shield*, 457 U.S. at 473 n. 10, 102 S.Ct. 2540.

**14.** "Denying [the plaintiff] a remedy ... is not likely to leave a significant antitrust violation ... unremedied." *Associated*, 459 U.S. at 542, 103 S.Ct. 897

*Plan,* 909 S.W.2d 548, 553 (Tex.App.—Austin, writ denied). The Funds do not seek to maintain suit against Tobacco in this capacity. Rather, the Funds artfully plead their case as a direct action, thereby attempting to distinguish this case from the typical benefit provider subrogation case wherein the Funds would be subject to the defenses good against the individual smokers. Herein lies the benefit to the Funds in casting their claim as a direct action. While there can be no doubt that the Funds' case would avoid the most threatening obstacles should they be allowed to proceed in a direct action, they are in no position to maintain such a claim. The Funds must recoup costs to which they are entitled in subrogation.

Having concluded that the Funds are not left without a remedy, this consideration serves as additional evidence that the Funds have not been proximately injured by Tobacco.

### 7. *Khurana v. Innovative Health Care Systems*

This Court is also guided by the Fifth Circuit gloss on proximate causation embodied in *Khurana v. Innovative Health Care Systems, Inc.,* 130 F.3d 143, 148 (5th Cir. 1997) where the Court held that:

> [t]he pertinent inquiry in determining the existence of proximate, or "legal," cause is "whether the conduct has been so significant and important a cause that the defendant should be held responsible." The proximate cause determination . . . is guided by indications of preconceived purpose, specifically intended consequence, necessary or natural result, reasonable foreseeability of result, the intervention of independent causes, whether the defendant's acts are a substantial factor in the sequence of responsible causation, and the factual directness of the causal connection.

For the purposes of the motion, the Court concedes that the first two factors—preconceived purpose and specifically intended consequence—weigh in the Funds' favor, as the Funds have adequately alleged that Tobacco intended to impose medical costs upon the

Funds. *Compl.,* ¶¶ 239, 282, 288, 314. The next two considerations—necessary or natural result and reasonable foreseeability of result—likewise support maintenance of the Funds' claims, as the complaint also supports such allegations.

The final three factors—intervention of independent causes, whether the defendant's acts are a substantial factor in the sequence of responsible causation, and the factual directness of the causal connection—weigh in favor of dismissal. While these factors implicate many of the same concerns as the directness inquiry addressed above (see IV(B)(1)), the Court is of the opinion that *Khurana* adds something of importance to the proximate cause analysis.

*Khurana* stands for the proposition that the presence of intervening factors breaks the causal chain between predicate acts and injury, thereby precluding a proximate cause finding. 130 F.3d at 149. Stated another way, *Khurana* requires that the injury to the plaintiff "flow" from the commission of the predicate acts. *Id.* The Court is of the opinion that the individual smokers' decisions to smoke or to continue smoking amount to intervening factors that break the causal chain between Tobacco's conduct and the cost burdens borne by the Funds. Without these actions taken by the Participants, medical costs attendant to tobacco use would not have been incurred. Therefore, this intervening link is additional evidence of the Funds' inability to make an adequate showing of proximate cause.

While a number of the *Khurana* factors weigh in the Funds' favor, the Court concludes that, on the balance, the *Khurana* gloss on proximate cause also favors dismissal of the complaint for failure to adequately allege proximate cause.

### 8. *Conclusion*

Accepting all allegations as true, the Court finds that the Funds failed to satisfy the proximate cause requirements applicable to RICO and antitrust claims. Tobacco's motion to dismiss the RICO,[15] Sherman Act[16]

15. The Court notes that five of the six federal

courts which have specifically considered the

and Texas Free Enterprise and Antitrust Act [17] claims on the basis of lack of proximate cause is, therefore, GRANTED.

## C. TEXAS COMMON LAW TORT CLAIMS

| | |
|---|---|
| COUNT VI: | Fraud and Misrepresentation |
| COUNT VII: | Negligent Misrepresentation |
| COUNT VIII: | Innocent Misrepresentation |
| COUNT IX: | Intentional Breach of Special Duty |
| COUNT X: | Negligent Breach of Special Duty |
| COUNT XII: | Simple and Gross Negligence |
| COUNT XIV: | Conspiracy and Concert of Action |
| COUNT XV: | Aiding and Abetting Liability |
| COUNT XVIII: | Vicarious Liability |

■ The Court concludes that the Funds cannot maintain the alleged common law tort claims because Tobacco did not legally cause injury to the Funds.

While the Texas causal formulation differs from the federal approach in form and terminology, in substance the same considerations control. Under Texas law, the term proximate cause embodies both factual and legal cause. *Union Pump Co. v. Allbritton,* 898 S.W.2d 773, 775 (Tex.1995). This differs from the federal approach in that proximate and factual cause are two separate concepts.

What the Court will refer to as legal cause with respect to the Texas common law claims implicates the same considerations with which proximate cause is concerned under the federal approach.

Principles of proximate cause—which include the legal cause requirement—apply to all of the state common law claims brought by the Funds. The claims can broadly be characterized as falling within three categories: negligence (Counts XII, IX and X), commercial torts (Counts VI, VII, and VIII), and derivative claims (Counts XIV, XV and XVIII).

### 1. Negligence Claims

It is axiomatic that proximate cause is required to state a claim in negligence. *Doe v. Boys Clubs of Greater Dallas,* 907 S.W.2d 472, 477 (Tex.1995) (an action sounds in negligence when there is a duty, a breach of that duty, and *damages proximately caused* by the breach of duty)(emphasis added).

viability of RICO claims filed by union healthcare trust funds in this context dismissed the claims: *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris,* No. 97–1051–MA, slip op. (D.Or. August 3, 1998); *Seafarers Welfare Plan v. Phillip Morris,* No. MJG–97–2127, 1998 WL 723158 (D.Md. July 13, 1998); *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris,* 1998 WL 476265, 1998 U.S. Dist. LEXIS 8302 (N.D. Cal. April 30, 1998); *Steamfitters Local Union No. 420 v. Philip Morris,* 1998 WL 212846 (E.D.Pa.1998); *Southeast Florida Laborers District Health and Welfare Trust Fund v. Philip Morris,* 1998 WL 186878 (S.D.Fla. April 13, 1998).

The one federal court which allowed RICO claims to proceed did so to the extent that the measure of damages sought was for costs borne only by the funds, such as harm to the funds' infrastructure, financial stability or ability to project costs. To the extent that the funds sought recovery for medical expenses, the court noted there was no risk of multiple recovery because participants who were reimbursed for medical costs by the funds cannot state as a measure of damages such expenses as a matter of New York state law. *Laborers Local 17 Health & Benefit Fund v. Philip Morris,* 1998 WL 146217, slip op. at 13 (S.D.N.Y. March 26, 1998). The Court further notes that Judge Scheindlin took the extraordinary step of certifying her ruling for interlocutory appeal. A ruling from the Second Circuit is pending.

**16.** All of the claims brought by union healthcare trust funds pursuant to the antitrust laws have been dismissed by federal courts where the issue was specifically considered by the court: *Oregon Laborers–Employers Health & Welfare Trust Fund v. Philip Morris,* No. 97–1051–MA, slip op. (D.Or. August 3, 1998); *Seafarers Welfare Plan v. Phillip Morris,* No. MJG–97–2127, 1998 WL 723158 (D.Md. July 13, 1998); *Stationary Engineers Local 39 Health & Welfare Trust Fund v. Philip Morris,* 1998 WL 476265, 1998 U.S. Dist. LEXIS 8302 (N.D. Cal. April 30, 1998); *Steamfitters Local Union No. 420 v. Philip Morris,* 1998 WL 212846 (E.D.Pa.1998); *Southeast Florida Laborers District Health and Welfare Trust Fund v. Philip Morris,* 1998 WL 186878 (S.D.Fla. April 13, 1998); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 7 F.Supp.2d 277 (S.D.N.Y.1998).

**17.** This finding comports with the conclusion reached by the one Texas federal district court which specifically considered the issue. Judge Folsom dismissed the claim brought pursuant to the Texas Free Enterprise and Antitrust Act by the State of Texas on two grounds: first, the State failed to plead an injury of the type the antitrust laws were intended to protect, and, second the State was neither a consumer nor a competitor in the market in which the trade was restrained. The same reasoning applies to the Funds. *Texas v. The American Tobacco Co.,* 14 F.Supp.2d 956 (E.D.Tex.1997).

## 2. Commercial Torts

The commercial torts pled by the Funds also require proof of proximate cause. The elements of a fraud claim are: (1) a material misrepresentation, (2) which was false, (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) *which caused injury. See DeSantis*, 793 S.W.2d at 688. Likewise, a properly stated claim for negligent misrepresentation under Texas law contains the proximate cause component. The elements of a negligent misrepresentation claim are: (1) a representation by the defendant, (2) in the course of his business or a transaction in which he has pecuniary interest; (3) defendant supplies false information for guidance of others in their business; (4) defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) *plaintiff suffers pecuniary loss by justifiably relying on the representation. Willcox v. Am. Home Assur. Co.*, 900 F.Supp. 850, 860 (S.D.Tex.1995). A claim for innocent misrepresentation under section 402B of the Restatement (Second) of Torts sounds for "physical harm to the consumer *resulting from* a misrepresentation of material fact" concerning the character of a product sold, upon which the consumer justifiably relied. *Way v. Boy Scouts of Am.*, 856 S.W.2d 230, 238 (Tex.App.—Dallas 1993, writ denied).

## 3. Derivative Claims

Liability for conspiracy, aiding and abetting, and vicarious liability is predicated upon the commission of an underlying tort. *Tilton v. Marshall*, 925 S.W.2d 672, 680 (Tex.1996). Whether the Funds can survive the motion to dismiss on the derivative claims turns upon sufficient pleading with respect to the underlying torts. As all claims brought by the Funds contain the legal cause component, liability on the derivative claims likewise requires legal cause.

## 4. Legal Cause

Having established that legal cause applies to the common law claims brought by the Funds, the Court now considers how this principle mandates dismissal of the claims.

Texas law comports with the federal common law in that a benefit provider's exclusive remedy for recovery of medical expenses lies in subrogation. As the analysis with respect to the federal claims was drawn from the common law, those same concerns apply with equal force to the state common law claims. This being the case, the Court incorporates by reference the analysis delineated above regarding proximate cause.

It is worth noting that the risk of subjecting Tobacco to duplicative liability is even greater with respect to the state common law claims. That Tobacco will be subjected to such a risk is real because Texas has not abrogated the collateral source rule.

The collateral source rule provides that an injured party is permitted to recover from the tortfeasor all damages proximately caused by the tortfeasor's actions without regard to whether the injured party has recovered damages for the same injuries from another source. *Brown v. American Transfer and Storage Co.*, 601 S.W.2d 931, 936 (Tex.1980). If a collateral payment falls within the rule, the principle forbidding double recovery for the same loss is not applicable. *Id.* The theory behind the collateral source rule is that a tortfeasor should not benefit from alternative payment sources independently procured by the injured party. *Id.* at 934.

Because Texas recognizes the collateral source rule, there is a very real risk that Tobacco would have to pay out medical expenses twice—to both the individual smokers and the Funds—should this Court allow the Funds' case to proceed. This neither equity nor justice countenances.

Moreover, should this Court allow the Funds to maintain suit, not only would Tobacco be subject to multiple liability for the same conduct, but the Funds could very well receive double recovery for the same injury. This is so because nothing precludes the Funds from seeking to enforce subrogation rights as against the Participants should the cases brought by individual smokers succeed.

The pendency of several claims by state governments in a capacity similar to that pled by the Funds does not alter this result. That such suits have withstood motions to dismiss does not inure to the Funds' benefit. As Judge Folsom noted in his order partially dismissing the State of Texas' case:

> the State brings this action based on its *quasi-sovereign interests* in protecting the health, welfare, and well-being of the populace of the State. This common law concept provides the State with an independent cause of action to recover damages it has allegedly incurred. It is clear that because the State is proceeding under this theory, there can be no better party to prosecute this matter. In fact, *no other party is empowered to bring this type of action.*

*See Memorandum Opinion and Order Re Defendants' Motion to Dismiss Count 1-3 and Counts 4-17 of the State's Second Amended Complaint* [docket entry 1031], *Texas v. American Tobacco Co.,* 14 F.Supp.2d 956 (E.D.Tex.1997)(emphasis added). The court grounded its decision on the State's unique ability to bring a direct action in a quasi-sovereign capacity. As the Funds have no common law quasi-sovereign interest, this opinion does not support the Funds' ability to maintain suit.

The Court again concludes that Fund must resort to remedies available in subrogation in order to recoup medical costs expended treating tobacco related illnesses. The Court is cognizant of the fact that the Funds' entitlement to sue Tobacco in subrogation does not extinguish other causes of action the Funds may be able to bring against Tobacco. Nevertheless, this Court cannot allow the Funds to masquerade claims which should properly be brought in subrogation as direct causes of action. To allow such claims to go forward would fly in the face of the firmly established common law rule that one who pays medical expenses on another's behalf does not have standing to assert a direct action against the tortfeasor. The Court concludes, therefore, that the Funds' attempt to characterize this action as direct under the common law of Texas fails as a matter of law.

In the absence of an adequate showing of legal cause, the Texas common law tort claims must be DISMISSED. Tobacco's motion to dismiss the Texas common law tort claims is, therefore, GRANTED.

## D. TEXAS STATUTORY CLAIMS

COUNT XI: Breach of Express and Implied Warranties—Tex. Bus. & Com. Code §§ 2.313, 2.314.

COUNT XVII: Violation of the Texas Deceptive Trade Practices–Consumer Protection Act (DTPA)—Tex. Bus. & Com.Code § 17.41 et seq.

### 1. *Commercial Code*

■ The Funds also bring claims for breach of express and implied warranties under Texas' version of the Uniform Commercial Code. Tex. Bus. & Com.Code §§ 2.313, 2.314. The express warranty claim is predicated upon statements the industry made to the public regarding the health effects of their products. *Compl.,* ¶ 345. The claim for breach of implied warranties is grounded upon the Funds' assertion that Tobacco's products are not safe when used for their intended purpose. *Compl.,* ¶ 347.

Where a plaintiff seeks to hold a defendant liable on a theory of breach of warranty, the plaintiff must plead the existence of a casual connection between the condition of the product when sold and the injury for which recovery is sought. *American Trailer and Equipment Co. v. Medellin,* 517 S.W.2d 27, 29 (Tex.Civ.App.—San Antonio 1974, no writ). Proximate cause—and, therefore, legal cause—is not to be presumed in warranty cases. *Procter & Gamble Mfg. Co. v. Langley,* 422 S.W.2d 773, 778 (Tex.Civ.App.—Dallas 1967, writ dism'd).

For the reasons articulated in the preceding sections, the Court concludes that the Funds have failed to sufficiently allege legal cause with respect to the warranty claims. The Funds claims for breach of warranty are, accordingly, DISMISSED.

### 2. *Deceptive Trade Practices Act*

■ The Funds further allege that Tobacco knowingly engaged in false, misleading or deceptive acts in violation of the Deceptive Trade Practices and Consumer Protection Act. *Compl.,* ¶ 393. Specifically, the Funds

maintain that Tobacco disseminated false information regarding the health risks of smoking and the addictive nature of nicotine. *Compl.*, ¶ 395–399. The Funds contend that they were induced to consummate transactions they would not have otherwise entered into had the information regarding the health consequences of smoking been available. *Compl.*, ¶ 401.

Although "producing cause" rather than "proximate cause" guides the causal analysis under the DTPA, *see* Tex. Bus. & Com.Code § 17.50(a)(1), the concept of legal cause applies with equal force to both causal formulations. *Union Pump*, 898 S.W.2d at 776. For the same reasons articulated in the preceding sections, the Court concludes that the Funds failed to make a showing of legal cause sufficient to maintain the DTPA claim. Injury sustained by the Funds in the form of payment of medical expenses to participants is not recoverable in a direct action brought pursuant to the DTPA. It is for this reason that Tobacco's motion to dismiss is GRANTED and the DTPA claim must be DISMISSED.

### E. TEXAS EQUITABLE CLAIM

COUNT XVI: Restitution to Prevent Unjust Enrichment

Tobacco contends the Funds' claim for restitution to prevent unjust enrichment must be dismissed for two reasons: one, because no benefit was conferred upon Tobacco, and, two, because the Funds have an adequate remedy at law in subrogation. The Court agrees.

■ Liability for unjust enrichment lies where one party has obtained a benefit from another by fraud, duress or the taking of an undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). The plaintiff must establish that the defendant received money "which in equity and good conscience belongs to the plaintiff." *Amoco Prod. Co. v. Smith*, 946 S.W.2d 162, 164 (Tex.App.—El Paso 1997, writ ref'd n.r.e). The Court is mindful that a claim for unjust enrichment is not proper merely because it appears fair that some recompense should be afforded an injured party. *Heldenfels*, 832 S.W.2d at 42. Rather, a claim for unjust enrichment lies where the circumstances give rise to an implied or quasi-contractual obligation to return benefits. *Amoco*, 946 S.W.2d at 164.

■ The Funds contend that they have in effect relieved Tobacco of immense liability and litigation expenses from thousands of individual suits for medical expenses by the victims of smoking. *Pls' Resp.* at 45. Moreover, they aver that Tobacco benefitted from increased sales as a result of the Funds' failure to take measures designed to curb tobacco use.

The Court finds that payment of the Participants' medical expenses did not enrich Tobacco. The costs expended by the Funds arose by reason of the applicable collective bargaining agreements. Assertions to the effect that such payments spared Tobacco liability do not, without more, properly allege a conferred benefit. To the contrary, Tobacco *is* being sued by the individual smokers. *See Cole v. Tobacco Institute, et al.*, No. 1:97cv256 (E.D. Tex. filed May 5, 1997); *Bush v. Philip Morris*, No. 5:97cv180 (E.D.Tex. filed July 7, 1997). Any other such benefit that the Funds attempt to claim inured to Tobacco's benefit is too indirect, remote and speculative to support recovery under this theory.

Moreover, in order to recover under this equitable theory, it must be shown that the plaintiff has no adequate remedy at law. *Hoarel Sign Co. v. Dominion Equity Corp.*, 910 S.W.2d 140, 143 (Tex.App.—Amarillo 1995, writ denied). This the Funds cannot show, as they have an adequate remedy at law in subrogation. Should the Participants prevail in recovering medical expenses incurred treating tobacco-related illnesses, the Funds may then assert their rights in subrogation as against the Participants.

The Court notes that this conclusion comports with Judge Folsom's finding when confronted with this issue under Texas law. *See Memorandum Opinion and Order Re Defendants' Motion to Dismiss Count 1–3 and Counts 4–17 of the State's Second Amended Complaint* [docket entry 1031], *Texas v. American Tobacco Co.*, 14 F.Supp.2d 956 (E.D.Tex.1997). Moreover, every federal court to specifically consider the viability of a

claim for unjust enrichment by union health-care trust funds in this context dismissed the claim.

It is for these reasons that the claim for unjust enrichment fails. Tobacco's motion to dismiss the claim for unjust enrichment is, therefore, GRANTED.

## V. LEAVE TO AMEND

If the Court chooses to dismiss the complaint, it must then decide whether to grant leave to amend. Leave to amend upon dismissal is not automatic. *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602 (5th Cir.1998). The Court concludes that leave to amend would be futile and that the deficiencies of the complaint could not be cured by amendment. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). The Funds have had ample opportunity to articulate a cognizable measure of damages—in the complaint, their response to the motion to dismiss and in oral argument before the Court. This being the case, the Court is of the opinion that leave to amend should be DENIED.

## VI. SUA SPONTE DISMISSAL

As the Court previously noted, neither B.A.T. Industries nor The Smokeless Tobacco Council joined the motion to dismiss for failure to state a claim. These defendants filed a separate motion to dismiss predicated upon lack of personal jurisdiction. Nevertheless, the Court *sua sponte* DISMISSES the claims against these two defendants on the ground that the Funds failed to state a claim upon which relief may be granted as against these two defendants. This Court may dismiss an action pursuant to Rule 12(b)(6) on its own motion so long as the procedure employed is fair. *See Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir.1998); *Guthrie v. Tifco Indus.*, 941 F.2d 374, 379 (5th Cir.1991). Here, the Court finds that the procedure employed was fair in that the Funds had numerous and sufficient opportunities to respond to the arguments raised in the motion and upon which the Court bases its dismissal.

## VII. CONCLUSION

Counsel for both sides are to be commended for the exceptional qualify of briefing and argument before this Court. In the final analysis, however, the Court concludes that sound judicial policy dictates that this action must be dismissed. Standing to bring suit must be limited to those parties directly injured. Here, the Funds pled as a measure of damages the medical costs spent treating Participants. Such damages are too remote and indirect a consequence of any wrongdoing by Tobacco to maintain suit under both the proximate cause analysis as articulated by federal courts and the legal cause analysis applicable to the Texas state law claims. Claims for medical expenses will have to be brought by directly injured parties, and the Funds will have to await reimbursement for such outlay through subrogation. For different reasons specific to the claim, the Funds are unable to maintain the remaining claim for restitution to prevent unjust enrichment.

Although Tobacco raises several count-specific objections to each of the Funds' claims, the Court sees no need to address such arguments in light of the foregoing. It is therefore ORDERED that:

(1) *Defendants' Motion to Dismiss* [19] is GRANTED.

(2) The Court *sua sponte* DISMISSES the claims against B.A.T. Industries and The Smokeless Tobacco Council.

(3) All motions not previously ruled upon are DENIED AS MOOT.

(4) Judgment shall be entered by separate order.

Signed this 30th day of August, 1998.