INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 734 HEALTH AND WELFARE TRUST FUND, Plaintiff,

v.

PHILLIP MORRIS, INCORPORATED, et al., Defendants.

Central States Joint Board Health and Welfare Trust Fund, Plaintiff,

v.

Phillip Morris Incorporated, et al., Defendants.

Nos. 97 C 8113, 97 C 8114.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 1, 1998.

Katharine Crane Byrne, Michael Daniel Mulvihill, Cooney & Conway, Chicago, IL, for Intern. Broth. of Teamsters Local 734 Health and Welfare Trust Fund.

David Bruce Love, Thomas James Frederick, Dan K. Webb, Lawrence R. Desideri, Winston & Strawn, Chicago, IL, for Philip Morris, Inc.

Michael T. Hannafan, Cory A. Johnson, Mark Alan Cisek, Michael T. Hannafan & Associates, Ltd., Chicago, IL, for B.A.T. Industries P.L.C.

Dawn Eileen Gard, Grippo & Elden, Chicago, IL, for Lorillard Tobacco Co., Inc.

Paul J. Walsen, Bell, Boyd & Lloyd, Chicago, IL, Harold C. Wheeler, James A. Morsch, Butler, Rubin, Saltarelli & Boyd, Chicago, IL, for Liggett & Myers, Inc.

Edward Michael Crane, Mark Edward Rakoczy, Deborah G. Solmor, Skadden, Arps, Slate, Meagher & Flom, Chicago, IL, for U.S. Tobacco Co.

Paul L. Price, Michael Gerard Bruton, Price, Tunney, Loughnane, Reiter & Bruton, Chicago, IL, Larry E. Hepler, Burroughs, Hepler, Broom, MacDonald & Hebrank, Edwardsville, IL, for Tobacco Institute, Inc.

Frank L. Butler, Shaw, Fairweather & Geraldson, Chicago, IL, for Smokeless Tobacco Council Inc.

Deborah Lynn Kuhn, Altheimer & Gray, Chicago, IL, for Hill and Knowlton, Inc.

Michael A. Pope, McDermott, Will & Emery, Chicago, IL, Michael Anthony Glackin,

Foley & Lardner, Chicago, IL, for Adams Apple Dist. Management Corp.

## MEMORANDUM OPINION AND ORDER

MANNING, District Judge.

### I. Introduction

The court is addressing a question of first impression in the Seventh Circuit: whether health and welfare funds may bring an action for economic damages incurred due to increased medical costs stemming from their members' consumption of tobacco products. The plaintiffs International Brotherhood of Teamsters Local 734 Health & Welfare Trust Fund and Central States Joint Board Health & Welfare Trust Fund (the Funds) are "employee welfare benefit plans" and "employee benefit plans" as defined under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1002(1) *et seq.* They have brought this instant action against the defendants—cigarette manufacturers, retailers, advertisers, and assorted trade associations—claiming, *inter alia,* that the defendants engaged in a nationwide conspiracy to:

- conceal the addictiveness and harmfulness of tobacco products;

- misrepresent the harmfulness and addictiveness of tobacco products;

- knowingly disseminate false statements regarding the addictiveness and harmfulness of tobacco products;

- not compete based on claims as to the health or safety of tobacco products;

- suppress the development and marketing of safer, less-addictive cigarettes;

- manipulate the nicotine content and potency to maintain and assure addiction.

The defendants[1] move to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(6), claiming the Funds have failed to state a cause of action for which relief can be granted. The Funds' ten-count complaints[2] raise claims for: (1) violations of federal and state antitrust law (count I); (2) violation of a special duty (count IV); (3) strict liability (count V); (4) negligence (count VI); (5) breach of express and implied warranties (count VII); (6) consumer fraud and misrepresentation (counts II, III, and IX); (7) unjust enrichment (count VIII); and (8) conspiracy (X). Alternatively, the defendants move to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(7) for failure to join indispensable parties—the individual union members who were allegedly injured, in fact, by the defendants' tobacco products. For the reasons set forth below, the defendants' motion to dismiss is granted and the case is hereby dismissed with prejudice. The court declines to address the defendants' joinder argument as it is moot.

### II. Background

In their complaints, the Funds allege that the tobacco industry and its related public relations consultants, trade associations, and research committees have engaged in a nationwide conspiracy dating back to the 1940s, when tobacco researchers allegedly discovered, but concealed, evidence indicating a causal relationship between tobacco products and lung cancer. The Funds allege that the tobacco industry denied the allegations, dismissing them as being part of a "health scare" and then expressly warranted to the public, through direct advertising campaigns, that cigarettes and tobacco products had no adverse effects on consumers' health. The alleged conspiracy gathered full steam in 1953 after the so-called "Big Scare" caused by the publication of the Dr. Ernest L. Wyn-

---

1. The defendants moving to dismiss include: Phillip Morris Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Company, Lorillard Tobacco Company, United States Tobacco Company, The Council For Tobacco Research—U.S.A., Inc., Smokeless Tobacco Council, Inc., Hill & Knowlton, Inc., and Liggett Meyers. Defendants B.A.T. Industries p.l.c., and the Tobacco Institute, Inc., have not moved to dismiss and instead contest whether the court has proper personal jurisdiction over them.

2. Originally, the Funds filed separate complaints before the Cook County Circuit Court in Chicago, Illinois. The defendants removed both actions pursuant to 28 U.S.C. § 1441, invoking federal jurisdiction under 28 U.S.C. §§ 1331 & 1332. Once in federal court, the court granted the Funds' motion to reassign the case captioned 97 C 8114, which was previously before Judge Aspen, to this court's docket based on its relatedness to 97 C 8113. The court has consolidated the actions since they raise completely identical questions of law and fact involving the same defendants. *See* Fed.R.Civ.P. 42(a).

der's report which indicated that the lung cancer was more common among smokers and that there was a direct correlation between the risk of lung cancer and those who smoked.

Due to the growing negative publicity, the Funds allege that the tobacco industry created the Tobacco Industry Research Committee (TIRC) which was responsible for perpetrating a nationwide propaganda campaign which falsely misrepresented the health effects of cigarette products and intentionally concealed the allegedly lethal effects of tobacco products. As part of its alleged campaign, TIRC published a "Frank Statement to Cigarette Smokers" ("The Frank Statement"), appearing in 448 newspapers nationwide. The Frank Statement denied the reports which linked smoking to lung cancer and thereby, according to the Funds, assumed a special duty to the public by promising to engage in medical research "into all phases of tobacco use and health."

The Funds claim that, notwithstanding its arguable pledge to protect consumer health, the tobacco industry continued its campaign for profit at the expense of consumer protection and the public health by agreeing to suppress market research into safer alternative products while simultaneously manipulating tobacco's nicotine content to hook new consumers.

### III. *Standard of Review for a Motion to Dismiss*

In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the court must assume the truth of all facts alleged in the complaint, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See e.g. McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir.1992); *Gillman v. Burlington N. R. Co.*, 878 F.2d 1020, 1022 (7th Cir.1989). Dismissal is properly granted only if it is clear that no set of facts which the plaintiff could prove consistent with the pleadings would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Kunik v. Racine County, Wis.*, 946 F.2d

1574, 1579 (7th Cir.1991), *citing Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

The court will accept all well-pled factual allegations in the complaint as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). In addition, the court will construe the complaint liberally and will view the allegations in the light most favorable to the nonmoving party. *Craigs, Inc. v. General Elec. Capital Corp.*, 12 F.3d 686, 688 (7th Cir.1993). However, the court is neither bound by the plaintiffs' legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiffs' claims. *Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir.1992), *cert. denied*, 508 U.S. 942, 113 S.Ct. 2421, 124 L.Ed.2d 643 (1993).

### IV. *Analysis*

#### A. Proximate Cause [3] /Standing

■ The defendants move to dismiss, arguing that the Funds' cannot recover in a direct action for remote and derivative injuries allegedly caused by the tobacco industry. That is, since the Funds' economic losses stem from alleged personal injuries inflicted by the tobacco industry upon Fund members, the Funds have suffered no direct injury and thus, are barred from bringing this action. In response, the Funds assert that the tobacco industry has proximately caused its economic losses and therefore have a viable cause of action in light of a recent decision in *State of Illinois v. Philip Morris et al.*, No. 96 L 13146, slip op. (Ill. Cir. Ct.).

While the Seventh Circuit has yet to address this specific issue, the court is not writing on a clean slate. The recent wave of state and federal tobacco litigation has compelled numerous courts to consider the legal and policy ramifications of similar derivative tort suits like this one. *See generally Texas Carpenters Health & Ben. Fund v. Philip Morris, Inc.*, No. 97 C 625, 1998 WL 685364 (E.D.Tx. Aug.31, 1998); *Laborers Lo. 17 Health & Ben. Fund v. Philip Morris, Inc.*, 7 F.Supp.2d 294 (S.D.N.Y.1998); *Oregon La-*

---

**3.** For the sake of argument and the purposes of this motion, the court shall assume that cigarettes are dangerous and do, in fact, cause serious health problems. This assumption is not, nor should it be, construed as a finding of fact in this or any other tobacco litigation.

*borers–Employers Health & Wel. Trust Fund v. Philip Morris,* No. 97–1051–MA, 1998 WL 544305 (D.Or. Aug.24, 1998); *Steamfitters Lo. 420 Wel. Fund v. Philip Morris, Inc.,* No. 97–5344, 1998 WL 212846 (E.D.Pa. Apr.22, 1998); *Iowa v. Philip Morris,* 577 N.W.2d 401 (Iowa 1998) (dismissing tort and antitrust claims in their entirety); *but see Iron Workers Lo. No. 17 v. Philip Morris, Inc.,* No. 97 C 1422, 1998 WL 602033 . (N.D.Ohio Sept.10, 1998) (denying motion to dismiss).

As can be seen, the trend has been to dismiss these claims on the basis that welfare funds or similar third parties have suffered no direct harm stemming from the tobacco industry's alleged misconduct. Overwhelming precedent compels the court to conclude the same. As the Supreme Court set forth in *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 532, n. 25, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983):

> *[w]here the plaintiff sustains injury from the defendant's conduct to a third person, it is too remote,* if the plaintiff sustains no other than a contract relation to such a third person, or is under contract obligation on his account, and the injury consists only in ... increasing the plaintiff's expense or labor of fulfilling such contract, unless the wrongful act is willful for that purpose. (emphasis in the original).

The Supreme Court has consistently abided by *Associated General* to preclude plaintiffs from seeking recovery for remote economic injuries sustained by third parties. *See Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268–269, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992). The Seventh Circuit and Illinois precedent likewise prevents such claims. In *Dundee Cement Co. v. Chemical Labs., Inc.,* 712 F.2d 1166, 1168—70 (7th Cir.1983), the Seventh Circuit held that the remoteness doctrine bars plaintiffs from recovering purely economic damages against defendants, as a matter of law, because a contrary rule would expose defendants to staggering liability caused by specter of unlimited liability while spurring endless litigation. The Funds' reliance on *State of Illinois v. Philip Morris* is unpersuasive since that case denied the defendants' motion to dismiss on the basis that there were factual disputes relevant to the proximate cause analysis which precluded dismissal. Here, the defendants claim that the court can dismiss this action as a matter of law under the remoteness doctrine and therefore need not address proximate cause or its fact intensive sub issue of cause in fact.

As noted by the defendants, the remoteness doctrine involves public policy concerns which are determined as a matter of law, and not fact, completely unrelated to factual or proximate causation. *Kraft Chemical Co. v. Illinois Bell Tel. Co.,* 240 Ill.App.3d 192, 181 Ill.Dec. 170, 608 N.E.2d 243 (1992), *citing Dundee,* 712 F.2d at 1166; *See also State of Iowa ex rel. Miller v. Philip Morris, Inc.,* 577 N.W.2d 401 (Iowa 1998). Applying the remoteness doctrine is even more important where, as here, the prospective class of plaintiffs and injuries are incalculable. The Funds have not alleged precisely how many of their members were smokers thereby precluding the court from accurately predicting the amount of increased costs absorbed by the Funds.

Apart from *Associated General, Holmes,* and *Dundee,* the Funds face an additional barrier to recovery in light of *Moorman Manuf. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Under the so-called *Moorman* doctrine, plaintiffs, as a matter of law, are barred as third parties from recovering purely economic damages caused by a defendant's tortious conduct. There are three exceptions to *Moorman* which permit recovery if the economic loss: (1) was the result of an intentional tort against the plaintiff; (2) is attributable to physical damage to property; and (3) where there is a special relationship between the tortfeasor and victim. *Dundee Cement Co. v. Chemical Labs., Inc.,* 712 F.2d at 1170.

None of the exceptions apply to the Funds in that they were not the direct target of the tobacco industries' alleged conspiracy, suffered no physical harm, nor had any special relationship with the tobacco industry. The court cannot ignore the fact that, when reduced to its common element, the Funds' allegations of economic injuries undoubtedly

stem indirectly from the physical effects smoking had on their individual members. As alleged, the tobacco industry peddled its products motivated by economic goal to sell cigarettes regardless of its health impact on consumers. A reckless or even intentional disregard for their customers' health and safety does not translate into an affirmative desire to impose a financial burden upon the Funds.

As such, even if the alleged tortious conduct was intentional, it was nonetheless directed at the individual smokers and not the Funds. Finally, the tobacco industry did not assume any special relationship with the Funds—assuming that the "Frank Statement" was intended to do so—since the Funds neither consumed tobacco products nor relied on the statements and therefore could not be harmed by either one.

■ Alternatively, based on the analysis above, the Funds run afoul of the standing doctrine. Article III of the United States Constitution restricts the federal courts' jurisdiction to hear only cases or controversies which occur when the plaintiff has, in fact, suffered an injury compensable under the law. *See Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). The party seeking to proceed in federal court must show: (1) the party has personally suffered an actual or threatened injury caused by the defendants' allegedly illegal conduct; (2) the injury must be fairly traceable to the challenged conduct; and (3) the injury must be one likely to be redressed by a favorable decision. *Valley Forge v. Americans United For Separation of Church & State,* 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

■ Even if their allegations are true, the Funds suffered no direct injury which is traceable to the defendants' conduct nor, based on their theory of liability, can their purported injury be redressed by a favorable decision. The Funds' alleged injury is far too attenuated from the alleged manipulation of the tobacco market. The individual members, and not the Funds themselves, consumed tobacco products and relied on the defendants' allegedly false representations and product manipulation. Moreover, even if the individual members' injuries could be imputed to the Funds, the court would have to assume the existence of far too many variables to conclude that they were proximately caused by the tobacco industry. For instance, the court would have to assume that the Funds' members injuries—cancer, emphysema, etc.—were, in fact, caused by the tobacco products, or assuming a safer alternative product had been available, that the Funds' members would, in fact, purchase it. Furthermore, the Funds could have avoided the additional costs by assessing higher health care contributions from its individual members who smoked.

In addition to standing, an equally compelling basis for dismissal is the substantial risk of double recovery posed by class action suits which could be brought by the individual members based on their personal injuries. In essence, the tobacco industry would be forced to pay for the same injury twice. This is a grave policy decision which is best left to Congress or the state legislatures instead of the courts. A balance must be made between the need to compensate consumers who may have been misled with the need to avoid exposing manufacturers to crushing liability. Accordingly, the court dismisses all of the tort-related claims raised in counts IV, V and VI with prejudice for lack of standing, and alternatively, for failure to state a claim for which relief can be granted.

### B. Antitrust Allegations

■ The Funds' complaints raise antitrust claims pursuant to the Illinois Antitrust Act, 740 ILCS 10/1, which, as a matter of law, must be construed in tandem with federal law when the Illinois statute is identical to the federal antitrust laws. *See* 740 ILCS 10/11 (West 1998); *see also Laughlin v. Evanston Hosp.,* 133 Ill.2d 374, 140 Ill.Dec. 861, 550 N.E.2d 986 (1990), *citing Miller v. Dep't of Registration & Educ.,* 75 Ill.2d 76, 25 Ill.Dec. 644, 387 N.E.2d 300 (1979). As such, the court shall look to federal precedent in evaluating the merit of the Funds' complaints.

Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, forbids conspiracies to restrain

interstate trade by means of contract, combination, or trust. Section 4 of the Clayton Act, 15 U.S.C. § 15, confers a private right of action upon any person whose business or property has been injured by such antitrust activity. The defendants challenge the complaints, arguing that the Funds have not alleged a cognizable antitrust violation and, alternatively, that they lack standing to vindicate the alleged antitrust violation.

 To state a cognizable antitrust violation, plaintiffs must allege facts demonstrating that they have suffered an "antitrust injury," rather than an injury sounding in tort which "might conceivably be traced to an antitrust violation." *Hawaii v. Standard Oil Co.*, 405 U.S. 251, 263 n. 14, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).; *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 595 (7thCir.1995). To determine whether the injury is covered by the antitrust laws, the court must focus on whether the plaintiff has alleged facts from which the court can infer that the plaintiffs have suffered direct harm caused by an injury stemming from conduct attributed to an injury of the type prohibited by the antitrust laws. *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977). Hence, to bring a claim under § 4, a plaintiff must allege the existence of an antitrust violation, *i.e.* the type of anticompetitive activity prohibited by the antitrust laws, which directly injured the plaintiff's business or property. *See generally Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990); *Associated General Contractors of California v. Carpenters*, 459 U.S. 519, 539–40, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983); *Greater Rockford Energy & Tech. Corp. v. Shell Oil Co.*, 998 F.2d 391, 394–95 (1993).

Here, the Funds claim that the tobacco industry conspired to effectuate an unreasonable restraint on trade by agreeing not to research or develop new and "safer" tobacco products thereby interfering with market competition, inflating tobacco prices, interfering with product competition, and increasing health care costs.

As noted by the Funds, the alleged conspiracy is the type of anti-competitive activity which was deemed violative of the antitrust laws in *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 500, 108 S.Ct. 1931, 100 L.Ed.2d 497 (1988). The *Allied Tube* Court reasoned that where, as here, the defendants agree not to manufacture, distribute, or purchase certain type of products, they engage in the type of activity subject to antitrust scrutiny because it deprives consumers of market competition which is presumed to benefit the public interest. *Allied Tube*, 486 U.S. at 500, 108 S.Ct. 1931.

The court is hard-pressed to believe that, if true, the allegations of suppressing tobacco research and technology would not have a pernicious effect on market competition. Basic economic principles dictate that research and development improves product quality which in turn increases competition within the market. By making better products, manufacturers obtain new customers at the expense of their competitors thereby motivating the competition to also improve its products which in turn spurs competition and serves the consumer by producing better products overall. It is simply ludicrous to think that consumers would not want to purchase safer tobacco products. Indeed, it is common knowledge that tobacco products are often advertised as having lower tar or less nicotine in order to entice customers to try a particular product instead of another. Agreements to suppress alternative technology undeniably quash market competition which hurts consumers in a manner prohibited by the antitrust laws.

In addition to the constitutional standing requirements, plaintiffs raising antitrust claims must specifically show that they have suffered an antitrust injury compensable by the antitrust laws. *Serfecz*, 67 F.3d at 595–597; *Sanner v. Board of Trade of the City of Chicago*, 62 F.3d 918, 926 (7th Cir.1995). Like the constitutional standing analysis, antitrust standing focuses on whether the plaintiff has, in fact, suffered a direct and concrete "antitrust injury." Antitrust standing is limited to plaintiffs whom Congress intended the antitrust laws to protect. *Standard Oil*, 405 U.S. at 263 n. 14, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

■ To determine whether the plaintiff is the proper party to bring an antitrust claim, *i.e.*, has standing to proceed with an antitrust claim, the court must consider; (1) the causal connection between the antitrust violation and the plaintiff's injury; (2) the nature of the plaintiff's injury and whether it's the type of activity sought to be redressed under the antitrust laws; and (3) the speculative nature of the plaintiff's claim for damages and the potential for duplicative recovery or complex apportionment of damages. *Associated Gen. Contractors,* 459 U.S. at 537–46, 103 S.Ct. 897.

■ Application of these factors has generally limited antitrust standing to market consumers and competitors. *Serfecz,* 67 F.3d at 596–597. As noted above, the Funds never allege that they purchased the defendants' products, and the Funds obviously were not market competitors. Furthermore, the causal connection between the Funds' injury and the alleged antitrust injury is riddled with rank speculation and thus barred by proximate cause. *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 477–478, 102 S.Ct. 2540, 73 L.Ed.2d 149 (1982) (holding standing arises when antitrust injury is proximately caused by alleged violation). Accordingly, the Funds' antitrust claims are dismissed with prejudice for the Funds' lack of standing.

## C. Fraud

In counts II, III, and IX, the Funds raise claims for fraud under Illinois common law and based on the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1. The defendants move to dismiss this claim pursuant to Fed.R.Civ.P. 12(b)(6) and, alternatively, under Fed.R.Civ.P. 9(b) for failure to plead fraud with sufficient particularity.

■ Under Illinois law, to plead a claim for common law fraud, the plaintiff must . allege that the defendant knowingly made a false statement of material fact with the intent to induce the plaintiff's reliance on the truth of that statement which causes the plaintiff to suffer damages. *Orix Credit Alliance v. Taylor Machine Works,* 125 F.3d 468, 479 n. 5 (7th Cir.1997).

■ To state a claim under the Illinois Consumer Fraud Act, the plaintiff must show: "(1) a deceptive act or practice; (2) an intent by the defendant that the plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving a trade or commerce." *Thacker v. Menard, Inc. et al.,* 105 F.3d 382, 386 (7th Cir.1997), *quoting Perona v. Volkswagen of America, Inc.,* 276 Ill.App.3d 609, 213 Ill.Dec. 328, 658 N.E.2d 1349, 1352 (1995).

■ The Funds' fraud claims are dismissed since they have failed to allege any facts showing that they relied on any material false statement made by the defendants. At best, the Funds' allegations demonstrate that their smoking members relied on the allegedly false statements contained in the "Frank Statement" along with other allegedly false statements regarding the health effects of tobacco products. But nothing in the complaints cause this court to reasonably conclude that the Funds ever relied on the defendants' factual representations concerning their products. Accordingly, the fraud claims raised in counts II, III, and IX are dismissed as to all defendants for failure to state a claim, and alternatively, for the Funds' lack of standing.

## D. Breach of Warranty

■ The Funds allege breach of express warranty and implied warranty. The complaints fail to specify what type of implied warranty and the court construes the complaint as claiming a breach of implied warranty of merchantability. To state a claim for breach of express warranty, the buyer must allege that the seller made: (1) an affirmation of fact or promise made to the plaintiff; (2) relating to the goods; (3) which becomes part of the basis of the bargain; and (4) guaranteeing that the goods will conform to the affirmation or promise. *L.S. Heath & Son v. AT & T Info. Systems,* 9 F.3d 561, 570 (7th Cir.1993). Similarly, an implied warranty of merchantability exists only between a merchant and the customer. *See generally, Bethlehem Steel Corp. v. Chicago Eastern Corp.,* 863 F.2d 508, 513 (7th Cir.1988).

As noted above, the Funds neither allege that they purchased the tobacco products nor ever relied on any of the alleged representations regarding the defendants' products. Accordingly, count VII is dismissed with prejudice for failure to state a claim, and alternatively, for the Funds' lack of standing.

## E. Unjust Enrichment

In Illinois, to state a cause of action for unjust enrichment the plaintiff must allege: (1) that the defendants unjustly retained a benefit conferred by the plaintiff; and (2) that retention of that benefit violates the fundamental principles of justice, equity, and good conscience. *Stephen & Hayes Const. v. Meadowbrook Homes,* 988 F.Supp. 1194, 1200 (N.D.Ill.1998). The Funds have not alleged what, if any, benefit they have conferred upon the defendants, and failed to respond to the defendants' motion to dismiss this claim. Accordingly, the unjust enrichment claim in count VIII is dismissed with prejudice as to all defendants for failure to state a claim, and alternatively, for the Funds' lack of standing.

## F. Conspiracy

In Illinois, to state a claim for civil conspiracy the plaintiff must allege: (1) an agreement between two or more persons; (2) to participate in an unlawful act or a lawful act in an unlawful manner; (3) an injury caused by the defendants; and (4) the overt act was done in furtherance of the common scheme. *Adcock v. Brakegate,* 247 Ill.App.3d 824, 187 Ill.Dec. 428, 617 N.E.2d 885 (1993), *aff'd* 164 Ill.2d 54, 206 Ill.Dec. 636, 645 N.E.2d 888 (1994). Where, as here, the plaintiffs have pled no underlying substantive claim, a conspiracy count fails as a matter of law. *Id.* Accordingly, the Funds' conspiracy claims are dismissed with prejudice as to all defendants for failure to state a claim, and alternatively, for the Funds' lack of standing.

## V. *Conclusion*

Wherefore, plaintiffs' (1) antitrust claim in count I is dismissed with prejudice; (2) tort-related claims in counts II—VI are dismissed with prejudice; (3) misrepresentation claim in count IX is dismissed with prejudice; (4) breach of warranty claims in count VII are dismissed with prejudice; (5) unjust enrichment claim in count VIII is dismissed with prejudice; and (6) conspiracy claim in count X is dismissed with prejudice.

B.A.T. Industries and the Tobacco Institute moved to dismiss for lack of personal jurisdiction without addressing the substantive claims. However, in light of this ruling, their motions to dismiss for lack of personal jurisdiction are moot. Assuming personal jurisdiction over those two defendants is proper, the substantive claims against them fail on the merits or are barred for lack of standing. Hence, rather than prolong the inevitable, the court dismisses all claims against B.A.T. and the Tobacco Institute with prejudice. Accordingly, having resolved all claims against all parties, the clerk of the court is directed to enter a Rule 58 judgment in case numbers 97 C 8113 and 97 C 8114.