LABORERS' AND OPERATING ENGINEERS' UTILITY AGREEMENT HEALTH & WELFARE TRUST FUND FOR ARIZONA, on behalf of itself and on behalf of all others similarly situated, Plaintiffs,

v.

PHILIP MORRIS, INC., R.J. Reynolds, Tobacco Company, Brown & Williamson Tobacco Corporation, B.A.T. Industries P.L.C., Lorillard Tobacco Company, Liggett Group, Inc., The American Tobacco Company, The Council for Tobacco Research—U.S.A., Inc., The Tobacco Institute, Inc., and Hill & Knowlton, Inc., Defendants.

No. Civ 97–1406 PHX SMM (JWS).

United States District Court,
D. Arizona.

Jan. 19, 1999.

Barry E. Hinkle, Van Bourg Weinberg Roger & Rosenfeld, Oakland, CA, for Laborers and & Operating Eng. Util. Agreement Health & Welfare Trust Fund, on behalf of itself and on behalf of all others similarly situated, plaintiffs.

William J. Maledon, Osborn Maledon PA, Phoenix, AZ, for Philip Morris Incorporated, defendant.

Brian Michael Goodwin, Goodwin Raup PC, Phoenix, AZ, for R.J. Reynolds Tobacco Company, defendant.

Samuel Anderson Thumma, Brown & Bain PA, Phoenix, AZ, for Brown and Williamson Tobacco Corporation, defendant.

S. Thomas Chandler, Chandler Tullar Udall & Redhair, Tucson, AZ, for B.A.T. Industries P.L.C., defendant.

Pamela M. Overton, O'Connor Cavanagh Anderson Westover Killingsworth & Beshears, Phoenix, AZ, for Lorillard Tobacco Co., defendant.

Rodney Wayne Ott, Bryan Cave LLP, Phoenix, AZ, for Council for Tobacco Research–U.S.A., Inc., defendant.

Edwin F. Hendricks, Sr., Meyer Hendricks & Bivens PA, Phoenix, AZ, for Tobacco Institute, Inc., defendant.

Louis A. Stahl, Streich Lang PA, Phoenix, AZ, for Hill & Knowlton Inc., defendant.

### PRELIMINARY ORDER

SEDWICK, District Judge.

#### I. PRELIMINARY NATURE OF THIS ORDER

At docket 27, defendants Philip Morris, Inc., R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, Lorillard Tobacco Company. The Council for Tobacco Research–USA, Inc., The Tobacco Institute, and Hill & Knowlton (hereafter collectively referred to as "Philip Morris") move to dismiss the complaint for failure to state a claim upon which relief may be granted. Defendant Liggett Group, Inc. ("Liggett") joins Philip Morris' motion at docket 29. Plaintiff Laborers' and Operating Engineers' Utility Agreement Health & Welfare Trust Fund for Arizona ("Laborers' Trust") oppose the motion at docket 33. Oral argument has been scheduled for February 26, 1999, at 9:30 a.m. in Phoenix on this motion and on other motions at dockets 23, 25, and 30, but, as explained below, this arrangement is being changed.

The purpose of this preliminary order is to set forth the court's tentative views regarding how the motion at docket 27 should probably be resolved to assist the parties as they prepare for oral argument. This preliminary order does not authorize the filing of any additional memoranda regarding the motion at docket 27. In light of this preliminary order, which will likely resolve all issues if adopted as a final order, the court will conduct a separate oral argument limited to the issues raised in the motion at docket 27. The argument will be heard telephonically in Anchorage on February 10, 1999 at 10:00 a.m. Mountain Standard Time (8:00 a.m. Alaska Standard Time).

#### II. BACKGROUND

This case is one of a number filed across the country in recent years in which pension funds seek to recover health care costs from tobacco companies. Laborers' Trust filed suit against Philip Morris for health problems suffered by its participants as a result of using tobacco products. Laborers' Trust alleges Philip Morris fraudulently misrepresented the risks associated with tobacco use and engaged in deceitful marketing and production activities calculated to encourage people to use and become addicted to tobacco products. Such use and addiction, in turn, increased tobacco-related illnesses and associated health care costs which Laborers' Trust is responsible for paying. Laborers' Trust seeks to recover these increased health care costs from Philip Morris. The 97–page, 11–count first amended complaint includes 412 paragraphs. The first amended complaint alleges racketeering and antitrust violations, fraudulent and negligent misrepresentation, and intentional and negligent breach of an assumed duty. The first amended complaint additionally seeks restitution of funds for unjust enrichment. Philip Morris argues Laborers' Trust's complaint must be dismissed because it purports to establish a direct cause of action by which Laborers'

Trust would sue tobacco companies in lieu of limited subrogation rights, and because any injury Laborers' Trust suffered was too remote from any alleged misconduct.

## III. STANDARD OF REVIEW

A motion to dismiss for failure to state a claim made pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. A claim should only be dismissed if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." [1] A dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." [2] In reviewing a Fed.R.Civ.P. 12(b)(6) motion to dismiss, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party." [3] The court is not required to accept every conclusion asserted in the complaint as true; rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged by the plaintiff." [4]

## IV. DISCUSSION

The instant motion must be considered in the wake of a number of court opinions addressing conceptually indistinguishable arguments in essentially identical cases. For brevity's sake, this court will synthesize and cite relevant authority it relies upon rather than reconstructing the comprehensive analyses already completed by other courts. As will be discussed further below, the essential concept underlying all issues is proximate cause. This concept may be analyzed in terms of standing, remoteness, or causation, all of which include principles that overlap to some degree depending upon the precise allegations of each claim. [5]

### A. RICO Claims

■ Counts 1 and 2 allege violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(b), (c), (d) ("RICO"). In Holmes v. Securities Investor Protection Corp., [6] the United States Supreme Court held RICO claims must establish proximate cause in the form of "some direct relation between the injury asserted and the injurious conduct alleged." [7] The Court applied factors discussed in Associated General Contractors of California, Inc. v. California State Council of Carpenters [8] to determine whether proximate cause was established. [9] These factors include: (1) how direct or

1. Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir.1997).

2. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.1988).

3. Vignolo, 120 F.3d at 1077.

4. Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir.1992) (quoting Brian Clewer, Inc. v. Pan American World Airways, Inc., 674 F.Supp. 782, 785 (C.D.Cal.1986)).

5. Judge Heyburn notes these concepts are interchangeable to some degree. Kentucky Laborers Dist. Council Health and Welfare Trust Fund et al. v. Hill & Knowlton, Inc., et al., 24 F.Supp.2d 755, 762 n. 1, 764 (W.D.Ky. 1998). Proximate cause embraces two concepts: (1) foreseeability; and (2) "a policy element that encompasses concepts of equity and standing." Oregon Laborers–Employers Health & Welfare Trust Fund, et al. v. Philip Morris, Inc., et al., 17 F.Supp.2d 1170, 1175 (D.Ore.1998). Any conceptual distinctions between proximate cause and the doctrine of remoteness do not seem material for the purposes of the present motion. See International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris, Inc., 34 F.Supp.2d 656, 661 (N.D.Ill.1998) ("[T]he remoteness doctrine involves public policy concerns which are determined as a matter of law, and not fact, completely unrelated to factual or proximate causation.").

6. 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992).

7. Holmes, 503 U.S. at 268, 112 S.Ct. at 1318.

8. 459 U.S. 519, 103 S.Ct. 897, 74 L.Ed.2d 723 (1983).

9. Holmes, 503 U.S. at 272–74, 112 S.Ct. at 1319–21.

indirect the causal connection is between the alleged misconduct and the injury suffered; (2) whether defendants intended injury; (3) whether Congress had intended to address the injury's nature; (4) whether other persons possessed sufficient motivation to vindicate the public's interest; (5) whether the injury was speculative; and (6) whether there was a risk of duplicative recovery or complex apportionment of damages.[10]

■ Here, the complaint alleges Philip Morris engaged in racketeering activity to maximize tobacco sales, mislead the government and public about the dangers of tobacco use, avoid responsibility for health care costs, and intimidate whistle blowers who might otherwise have alerted the government and public about the preceding.[11] However, there is no direct relation between the alleged misconduct and the injury suffered. The injury Laborers' Trust allegedly suffered is that it has "been required to incur significant costs and expenses attributable to tobacco-related diseases."[12] As one court recently noted in a similar case, "[t]he plaintiffs' injuries are entirely dependent upon injuries sustained by their participants and beneficiaries, making them at least one step removed from the challenged harmful conduct."[13] A number of other persons possess sufficient motivation to prosecute suits, as witnessed by the flood of tobacco-related cases. The risk of duplicative recovery or complex apportionment of damages is high given the nationwide increase in tobacco litigation and the individualized nature of tobacco-related illnesses. Under these circumstances, the complaint's RICO claims lack proximate cause.

■ Laborers' Trust attempts to avoid this conclusion by arguing it has alleged injury directed at itself as well as injury directed at its participants and beneficiaries. This argument has met with mixed success. The complaint is dense and less than precise. However, liberally construing all allegations and inferences in Laborers' Trust's favor, the alleged direct injury is that Philip Morris' misconduct represented a deliberate attempt to shift healthcare costs onto trust funds and additionally prevented Laborers' Trust from educating its participants about the dangers associated with using tobacco and taking other steps to deter smoking.[14] Some courts have concluded trust funds may avoid complete dismissal of RICO claims on 12(b)(6) grounds by alleging direct injury.[15] These courts have ordered dismissal of RICO claims embracing injury directed at participants and beneficiaries, and have further noted that the surviving RICO claims had little chance of withstanding summary judgment.[16] Other courts have rejected efforts to split RICO claims into direct and indirect claims and held that alleged RICO violations were not related to increased health care expenses.[17]

**10.** *Oregon Laborers–Employers Health & Welfare Trust Fund et al. v. Philip Morris, Inc., et al.,* 17 F.Supp.2d 1170, 1176–77 (D.Ore. 1998).

**11.** First Amended Complaint, docket 18, ¶ 249 at 68–69; ¶ 256 at 73–74; ¶ 269 at 75–76.

**12.** First Amended Complaint, docket 18, ¶ 258 at 74.

**13.** *Oregon Laborers, supra,* 17 F.Supp.2d at 1179.

**14.** First Amended Complaint, docket 18, ¶ 255a at 70–71, ¶¶ 258–261 at 74.

**15.** *New Jersey Carpenters Health Fund, et al. v. Philip Morris, Inc., et al.,* 17 F.Supp.2d 324, 336, 338–39 (D.N.J.1998); *Kentucky Laborers Dist. Council Health & Welfare Trust Fund v. Hill & Knowlton, Inc.,* 24 F.Supp.2d 755, 768–71 (W.D.Ky.1998); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.,* 7 F.Supp.2d 277, 288–89 (S.D.N.Y.1998).

**16.** *New Jersey Carpenters, supra,* 17 F.Supp.2d at 333–35 nn. 12–14; *Kentucky Laborers, supra,* 24 F.Supp.2d at 768–71.

**17.** *International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris, Inc., et al.,* 34 F.Supp.2d at 659–62 (N.D.Ill.1998); *Seafarers Welfare Plan, et al. v. Philip Morris,* 27 F.Supp.2d 623, 631–32 (D.Md.1998); *Texas Carpenters Health Benefit Fund et al. v. Philip Morris, Inc., et al.,* 21 F.Supp.2d 664, 670–71 (E.D.Tex.1998); *Oregon Laborers–Employers Health & Welfare Trust Fund, et al. v. Philip Morris, Inc., et al.,*

Having reviewed the relevant authority, this court is persuaded that the latter position is more persuasive. Any RICO claim would have to satisfy the proximate cause analysis discussed in *Holmes*. In *Oregon Laborers*, Judge Marsh observed, "[t]hat defendants may have specifically intended to harm health care providers by aggressively marketing their product and by concealing known health dangers fails to alter the threshold inquiry of standing and proximate cause."[18] Judge Heartfield recently remarked that determining whether proximate cause is properly alleged "calls for the balancing of mixed considerations of logic, common sense, justice, policy and precedent."[19]

As noted above, even those courts which have permitted direct injury theories to withstand a 12(b)(6) motion have held RICO claims for injuries directed at beneficiaries and participants must be dismissed.[20] Thus, those courts hold trust funds alleging direct injury RICO claims are only able to recover that segregable percentage of medical costs which would have been saved had the trust funds been able to deter tobacco use.[21] The problem with this conclusion is that it results in claims incapable of proof. The alleged injury is expenditure of health care costs. This injury was suffered because of illnesses contracted by the trust fund's participants. Laborers' Trust would not be entitled to recover such costs in a direct action.[22] The *Holmes* Court restated the basic principle that at common law, "a plaintiff who complained of harm flowing merely from the misfortunes visited upon

a third person by the defendant's acts was generally said to stand at too remote a distance to recover [damages]."[23] Laborers' Trust occupies that same position. Judge Ryskamp analyzed similar RICO claims and ordered dismissal:

> Inspection of the Fund's claims reveals that the alleged harm does not affect the Fund directly, but only affects the Fund's participants. Furthermore, the three considerations relied upon in Holmes demonstrate that the Court should avoid finding that proximate cause exists here. The Fund is not suing to recover damages which the defendants caused to it directly, but is attempting to recover economic damages which it incurred by virtue of its contractual relationship with third parties who were allegedly harmed by the defendants. The "direct relation" between the Fund's alleged injury and the defendants' conduct is absent.
>
> Analysis of the Holmes factors reveals that this conclusion is the correct one. First, if the Court permitted this claim to go forward, it would open a Pandora's box of damage calculations. The Court would be required to determine how much of the damages should be paid to the Fund's participants, the smokers, and how much should be paid to the Fund. Second, the risk of multiple recoveries is real. A certified class action of allegedly injured Florida smokers is currently pending in Dade County Circuit Court. The plaintiff class includes the Fund's participants and seeks to recover

17 F.Supp.2d 1170, 1179 (D.Ore.1998); *Steamfitters Local Union No. 420 Welfare Fund v. Philip Morris, Inc.*, 1998 WL 212846 at *2 (E.D.Pa.1998); *Southeast Florida Laborers District Health & Welfare Trust Fund v. Philip Morris*, 1998 WL 186878 at *5 (S.D.Fla.1998); *City and County of San Francisco v. Philip Morris, Inc., et al.*, 957 F.Supp. 1130, 1137 (N.D.Cal.1997).

18. *Oregon Laborers, supra*, 17 F.Supp.2d at 1179.

19. *Texas Carpenters, supra*, 21 F.Supp.2d at 669.

20. *New Jersey Carpenters, supra*, 17 F.Supp.2d at 336–38; *Kentucky Laborers, supra*, 24 F.Supp.2d at 761–64.

21. See, e.g., *Kentucky Laborers,. supra*, 24 F.Supp.2d at 761.

22. *Anthony v. Slaid*, 52 Mass. (11 Met.) 290, 291 (1846).

23. *Holmes*, 503 U.S. at 268–69, 112 S.Ct. at 1318.

the same medical expenses which the Fund seeks in the instant case. Third, pendency of the Engle action and the State's recent tobacco settlement demonstrates that there are ample "private attorneys general" who will vindicate the alleged wrongs.[24]

This reasoning is of equal force here. The "Pandora's Box of damage calculations" will be compounded by the individualized nature of tobacco-related illnesses and consequent health care claims. There is or was a pending action filed by the State of Arizona in Arizona state court.[25] Under these circumstances, *Holmes* compels dismissal of the RICO claims.

Laborers' Trust raises two final arguments. First, it argues that "[t]he primary purpose of standing/remoteness/proximate cause analysis is to choose the best plaintiff for enforcement of the statutory claims at issue."[26] Laborers' Trust then concludes that since individuals would be barred from filing RICO claims to recover for personal injuries, it is the only plaintiff that exists to vindicate statutory rights. This analysis is not necessarily inaccurate, but neglects to give appropriate consideration to the *Holmes* factors previously discussed. In one sense, it can certainly be argued that permitting trust funds to litigate direct action claims represents an efficient means to enforce statutory rights. However, precedent, policy, and fundamental fairness cannot be sacrificed for efficiency's sake. Furthermore, given the risks of duplicative recovery,

complex apportionment of damages, and the tenuous connection between the alleged misconduct and the injury suffered, it is equally arguable that trust fund complaints represent the most inefficient means of litigating these claims.

The second and final argument Laborers' Trust makes is that "[t]he majority of district courts considering claims asserted by Taft–Hartley health funds have also sustained the sufficiency of those claims."[27] This is not accurate. As Judge Manning noted in a recent opinion which dismissed identical claims, "the trend has been to dismiss these claims on the basis that welfare funds or similar third parties have suffered no direct harm stemming from the tobacco industry's alleged misconduct. Overwhelming precedent compels the court to conclude the same."[28] However, even if a contrary trend were evident, this court should not simply count cases. Instead, it is this court's responsibility to apply the law in light of reason, policy, and precedent. Doing so, this court concludes the RICO claims should be dismissed.

### B. *Antitrust Claims*

■ Counts 3 through 5 allege antitrust violations based on the Sherman and Clayton Acts, 15 U.S.C. §§ 1 and 15. Count 6 alleges restraint of trade under Arizona's antitrust act. Arizona's antitrust act mirrors federal law and is analyzed and construed in harmony with federal law.[29] Neither party has argued that Arizona antitrust law is or should be analyzed differently than corresponding federal law.[30]

---

24. *Southeast Florida Laborers, supra,* 1998 WL 186878 at *5.

25. *State of Arizona v. American Tobacco Co.,* No. CV 96–14769 (Maricopa Cty.Supr.Ct.).

26. Opposition, docket 33 at 22.

27. Opposition, docket 33 at 10 n. 7.

28. *International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris,* 34 F.Supp.2d 656, 661 (N.D.Ill.1998).

29. *Brooks Fiber Communications of Tucson, Inc. v. GST Tucson Lightwave, Inc.,* 992 F.Supp. 1124, 1130 (D.Ariz.1997).

30. Arizona law expressly provides that "[i]t is the intent of the legislature that in construing this article, the courts may use as a guide interpretations given by the federal courts to comparable federal antitrust statutes." Ariz. Rev.Stat. § 44–1412. Consistent with this guidance, Arizona courts look to federal antitrust law and decisions in resolving state antitrust issues. *All American School Supply Co. v. Slavens,* 128 Ariz. 261, 262, 625 P.2d 324, 325 (1981) (affirming trial court that relied on federal antitrust cases to resolve state antitrust claims); *Wedgewood Investment Corp. v. International Harvester Co.,* 126 Ariz. 157, 160, 613 P.2d 620, 623 (App.1979) ("The Arizona legislature clearly intended to strive for

Therefore, state and federal antitrust claims will be assessed together.[31]

■ To determine whether a plaintiff has standing to bring an antitrust claim, the same six factors previously discussed regarding RICO claims are applied.[32] For present purposes, the most important factor is the second factor which requires Laborer's Trust to establish an antitrust injury.[33] The Ninth Circuit has held antitrust injury requires proof that the alleged misconduct actually caused the antitrust injury and that such injury must be "within a field of commerce in which the claimant is engaged."[34] Laborers' Trust must allege and establish it is a consumer or competitor whose injury is proximately caused by Philip Morris' alleged antitrust misconduct.[35]

Here, there is no evidence or allegation that plaintiffs are consumers of tobacco products or are engaged in the same field of commerce; that is, the tobacco industry. Failing allegations that Laborers' Trust is a consumer or competitor, the alleged injury or harm must be inextricably intertwined with the alleged antitrust conspiracy.[36] In either event, proximate causation must be established, and it is absent here.

The complaint's allegations contend that Philip Morris violated antitrust laws by conspiring to fix the quality of tobacco products and withholding safer tobacco products from the general market which presumably resulted in higher health care costs being incurred.[37] However, any alleged antitrust activity attributable to the defendants is simply too speculative and attenuated to support proximate causation. All of the factors previously discussed apply with equal force here. Judge Marsh observed, "every other federal court to address the issue of whether pension funds have standing to pursue claims under the antitrust laws has concluded that they do not."[38] This court concurs. Therefore, Laborers' Trust's antitrust claims must be dismissed.[39]

### C. Fraudulent and Negligent Misrepresentation

■ Under Arizona law, both fraudulent and negligent misrepresentations require proof of reliance.[40] Proximate causation is additionally a necessary element of any tort, intentional or negligent. The complaint alleges reliance on the claimed

uniformity between federal and state antitrust laws.").

31. See, e.g., New Jersey Carpenters, supra, 17 F.Supp.2d at 339 n. 20 (applying New Jersey law and reaching same conclusion); Oregon Laborers, supra, 17 F.Supp.2d at 1176 n. 2 (applying Oregon law and reaching same conclusion).

32. Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 537–46, 103 S.Ct. 897, 908–12, 74 L.Ed.2d 723 (1983).

33. New Jersey Carpenters, supra, 17 F.Supp.2d at 340.

34. Metro Indus., Inc. v. Sammi Corp., 82 F.3d 839, 843 (9th Cir.), cert. denied 519 U.S. 868, 117 S.Ct. 181, 136 L.Ed.2d 120 (1996).

35. Oregon Laborers, supra, 17 F.Supp.2d at 1176; New Jersey Carpenters, supra, 17 F.Supp.2d at 340.

36. Vinci v. Waste Management, 80 F.3d 1372, 1376 (9th Cir.1996), cert. denied, 520 U.S.

1119, 117 S.Ct. 1252, 137 L.Ed.2d 333 (1997).

37. See, e.g., First Amended Complaint, docket 18, ¶¶ 276–280 at 76–77; ¶¶ 294–295 at 79; ¶¶ 307–08 at 81 (for illustrative examples of antitrust allegations).

38. Oregon Laborers, supra, 17 F.Supp.2d at 1178 (citations omitted); see also New Jersey Carpenters, supra, 17 F.Supp.2d at 341.

39. See also, International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris, Inc., et al., 34 F.Supp.2d at 664–65 (N.D.Ill.1998); New Jersey Carpenters, supra, 17 F.Supp.2d at 339–342.

40. Davis v. First Nat'l Bank of Arizona, 124 Ariz. 458, 465, 605 P.2d 37, 44 (App.1979) (stating elements for fraudulent misrepresentation); St. Joseph's Hosp. and Med. Ctr. v. Reserve Life Ins. Co., 154 Ariz. 303, 305, 742 P.2d 804, 806 (App.1986) (stating elements for negligent misrepresentation).

misrepresentations,[41] which for purposes of the present motion is sufficient to preclude dismissal on that basis. However, the same causation problems previously discussed fatally infect Laborers' Trust's misrepresentation claims. Accordingly, these claims must be dismissed.

### D. Intentional and Negligent Breach of Assumed Duty

 Although neither party cites any Arizona case, Arizona has adopted Sections 323 and 324A of the Restatement (Second) of Torts to analyze breach of assumed duty claims.[42] Physical harm must be alleged and established.[43] Laborer's Trust has not alleged physical harm. As noted by one recent case, "every federal and state court [with one exception] addressing claims of this kind as against the tobacco industry have entered dismissal orders based upon the absence of physical harm, a necessary element [under the Restatement]."[44] Furthermore, the same proximate causation obstacles previously discussed still exist. Consequently, Laborer's Trust breach of assumed duty claims must be dismissed.

### E. Restitution for Unjust Enrichment

 Under Arizona law, unjust enrichment is based on five elements: (1) an enrichment; (2) an impoverishment; (3) a connection between the enrichment and impoverishment; (4) absence of justification for the enrichment and the impoverishment; and (5) absence of a remedy provided by law.[45] Subsumed within the concept of "enrichment" is that conferral of a benefit must be alleged and proved to establish a claim for restitution on the grounds of unjust enrichment.[46] Laborers' Trust paid health care benefits to its participants and their beneficiaries. Laborers' Trust does not allege it conferred any benefit on Philip Morris. No benefit was conferred on Philip Morris. Accordingly, the claim for restitution must be dismissed.[47]

## V. CONCLUSION

The far-reaching concerns underlying the complaint present policy issues that are "best left to Congress or the state legislatures instead of the courts."[48] For the foregoing reasons, it appears to the court that the motion at docket 27 should probably be granted. If so, all other pending motions would be denied as moot. In light of this preliminary order, oral argument will only be held on the motion at docket 27. The court may or may not adopt this preliminary order as its final order depending upon oral argument.

## VI. ORAL ARGUMENT RESCHEDULED

The oral argument set for February 26, 1999, is **VACATED**. Instead, oral argument will be heard on February 10, 1999,

---

41. First Amended Complaint, docket 18, ¶ 367 at 85; ¶ 378 at 88.

42. *Thompson v. Sun City Community Hosp., Inc.*, 141 Ariz. 597, 608, 688 P.2d 605, 616 (1984); *Tollenaar v. Chino Valley Sch. Dist.*, 190 Ariz. 179, 945 P.2d 1310, 1312 (App. 1997).

43. Restatement (Second) of Torts, § 323 at 135, § 324A at 142 (1965).

44. *Oregon Laborers, supra,* 17 F.Supp.2d at 1182.

45. *Community Guardian Bank v. Hamlin,* 182 Ariz. 627, 630, 898 P.2d 1005, 1008 (App. 1995).

46. *USLife Title Company of Arizona v. Gutkin,* 152 Ariz. 349, 354, 732 P.2d 579, 584 (App. 1986).

47. *Texas Carpenters, supra,* 21 F.Supp.2d at 678; *New Jersey Carpenters, supra,* 17 F.Supp.2d at 344; *Oregon Laborers, supra,* 17 F.Supp.2d at 1182; *International Bhd. of Teamsters Local 734 Health and Welfare Trust Fund v. Phillip Morris, Inc., et al.,* 34 F.Supp.2d at 665 (N.D.Ill.1998); *Seafarers Welfare Plan, et al. v. Philip Morris,* 27 F.Supp.2d 623, 636 (D.Md.1998).

48. *Teamsters Local 734, supra,* 34 F.Supp.2d at 662.

in Anchorage, Alaska. Argument will be telephonic. Argument will be heard at 10:00 a.m. Mountain Standard Time (8:00 a.m. Alaska Standard Time). The argument on February 10, 1999, will be limited to the motion at docket 27. Each side will be limited to 25 minutes. Defendants shall allocate their 25 minutes among themselves as they see fit, and if they cannot agree then pro rata. In view of the tentative views expressed in this order, plaintiffs' counsel shall argue first. If the motion at docket 27 is granted, the motions at dockets 23, 25, and 30 will be denied as moot without oral argument. If the motion at docket 27 is denied, the court will reschedule oral argument on the motions at dockets 23, 25, and 30.

### ORDER FROM CHAMBERS

This minute order confirms the oral decision rendered on the record after oral argument on February 10, 1999. The motion at docket 27 is **GRANTED** for the reasons stated in the preliminary order dated January 19, 1999.

All other pending motions are DENIED as MOOT.

The request for leave to amend is DENIED as futile.